892 F.2d 1044
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Edward HATCHER, Defendant-Appellant.
 No. 89-5454.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1990.
 
 Before BOYCE F. MARTIN, Jr. and ALAN E. NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Thomas Edward Hatcher appeals his convictions for conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride (in violation of 21 U.S.C. § 846), carrying a firearm during and in relation to a violation of the federal narcotics statutes (in violation of 18 U.S.C. § 924(c)(1)), possessing two unregistered machine guns and a rifle with a silencer (in violation of 26 U.S.C. §§ 5861(d), 5871), and using a communication facility to facilitate a violation of the federal narcotics statutes (in violation of 21 U.S.C. § 843(b)).
 
 I.
 
 2
 Derry Monroe, an undercover agent with the Blount County, Tennessee, Sheriff's Department met the appellant, Thomas Hatcher, through Charles Birchfield, appellant's drug associate. Agent Monroe informed Hatcher that Monroe's brother was a staff sergeant in the Marine Corps and that he could obtain desired weapons. On August 9, 1988, Monroe met with Hatcher at appellant's business, H & H Motors, to discuss the procurement of a bazooka for Hatcher. In a tape recorded telephone conversation on August 15, 1988, appellant asked Monroe if he could obtain approximately twenty handgrenades and "a couple" fully automatic AR-15 rifles in addition to the bazooka. This recorded conversation was played to the jury.
 
 
 3
 Monroe met with Hatcher on August 23, 1988 at H & H Motors. The agent handed the appellant a list of weapons that Monroe could procure. Hatcher informed Agent Monroe that he wanted a sniper rifle with a silencer and a night-scope. Hatcher proposed trading cocaine for the weapons. This meeting was surreptitiously recorded by Agent Monroe and was played to the jury.
 
 
 4
 Monroe met with Hatcher on August 26, 1988 at H & H Motors. Monroe handed Hatcher a list of weapon prices and appellant handed Monroe a list of cocaine prices. The appellant did not reveal the identity of his drug supplier, an individual he referred to only as the "big boy." The price list for seventeen ounces of cocaine contained three price categories: a one-time deal price, a two-time deal price, and a price for dealing once every two months in the future. Hatcher told the undercover agent that he had received the cocaine price quotations from his supplier two days earlier, adding that his supplier wanted to know what the frequency of the cocaine business would be. Both parties agreed to meet on September 6, 1988 to exchange the weapons for the cocaine. This meeting was recorded by Agent Monroe and the Sheriff's Department, in cooperation with the Federal Bureau of Investigation and the Bureau of Alcohol, Tobacco and Firearms. This recording was played to the jurors.
 
 
 5
 Agent Monroe telephoned Hatcher on September 5, 1988 to ascertain whether the appellant had obtained the cocaine. Hatcher indicated that he was having difficulty obtaining the cocaine from his source. Hatcher promised to have the cocaine available on September 6, 1988, and agreed to telephone Agent Monroe immediately when arrangements for the cocaine distribution were finalized with his supplier.
 
 
 6
 On September 6, 1988, Hatcher's secretary telephoned Agent Monroe and told him that Hatcher wanted to meet with him at the 411 Grill at 9:30 a.m. At this meeting Hatcher informed Monroe that he would be able to get the entire seventeen ounces of cocaine that Monroe had inquired about, but would need to contact his supplier to determine if an additional two ounces of cocaine would be available. Agent Monroe and Special Agent Winston Davidson (posing as Monroe's Marine Corps brother) of the Bureau of Alcohol, Tobacco and Firearms, drove the weapons that Hatcher had ordered to H & H Motors. Hatcher informed the agents that he could not transport the weapons personally due to his criminal record and the accompanying risk that his car might be stopped by law enforcement authorities. Appellant arrived approximately thirty to forty minutes later and instructed the agents to drive across the road to a house that was leased by Hatcher.
 
 
 7
 The weapons were unloaded from the agents' vehicle for the appellant's inspection. Hatcher examined the weapons which included hand grenades (fake), C-4 explosive (fake), a sniper rifle with a silencer and scope, and two AR-15 automatic machine guns. Hatcher informed the agents that he wanted the weapons hidden in the house. Hatcher opened the front door of the house and instructed the agents to carry the weapons into the house and hide them under the bed. Hatcher told the agents that he needed the weapons to "take care" of "Johnny" by "cramming two hand grenades down his throat." Hatcher locked the door behind them as he and the agents left the house. The three men then proceeded across the street to Hatcher's business, H & H Motors. Official records (National Firearms Registration and Transfer Records) maintained by the Bureau of Alcohol, Tobacco and Firearms in Washington, D.C., contained no records indicating that the two AR-15 machine guns or the Remington rifle with the silencer were registered to the appellant, Thomas Hatcher.
 
 
 8
 Hatcher assured the agents that the cocaine would be delivered, adding that he had made a $10,000 deposit to guarantee the cocaine delivery. After waiting approximately an hour and a half for Hatcher's cocaine supplier to arrive, Hatcher met with an unknown man then returned to H & H Motors and informed the agents that the weapons would have to be moved. Special Agent Davidson informed Hatcher that he and his brother, Agent Monroe, would have to retrieve the weapons because the cocaine had not arrived. The agents and the appellant returned to the house, Hatcher unlocked the door, and the agents, with Hatcher's assistance, loaded the weapons into the trunk of their vehicle. The three men then returned to H & H Motors.
 
 
 9
 Hatcher repeatedly assured the agents that his supplier would arrive with the cocaine and suggested that he contact the agents on his telephone pager when the cocaine arrived. Hatcher gave his telephone pager to the agents and promised to contact them when the drugs arrived. The agents left H & H Motors at approximately 2:30 p.m. FBI and ATF Agents, among others, immediately entered H & H Motors with a search warrant authorizing them to search Hatcher's business.
 
 
 10
 FBI Agent Clyde Merryman participated in the search of H & H Motors. Agent Merryman instructed the appellant to face the wall and asked Hatcher if he was carrying a weapon. Appellant admitted that he had a pistol in his boot. Agent Merryman retrieved the loaded .38 caliber pistol from inside Hatcher's boot. Merryman recovered the list of available weapons from the desk where Hatcher was seated. Agent Merryman also found Charles Birchfield's telephone number underlined in a telephone book on the same desk.
 
 
 11
 Charles Birchfield testified that he had been Hatcher's cocaine associate. Birchfield met with Hatcher on several occasions, but particularly recalled a meeting with Hatcher held September 5, 1988 at H & H Motors. After informing Birchfield that he had contacted his cocaine supplier four days earlier, Hatcher asked Birchfield to help deliver the cocaine to Agent Monroe. The appellant informed Birchfield that he was going to exchange the drugs for guns and cash, but that his cocaine supplier had not yet contacted him regarding the delivery. Hatcher also showed Birchfield the weapon price list.
 
 
 12
 The appellant told Birchfield that he needed Birchfield to "cover his back" (i.e., protect Hatcher) during the drugs for weapons exchange. Birchfield observed Hatcher telephone Agent Monroe that day and listened to the conversation. Hatcher informed Birchfield that his cocaine supplier was from Florida, then sent Birchfield home and instructed him to wait there until contacted by Hatcher. Hatcher telephoned Birchfield at 1:30 p.m. on September 5, 1988 and told Birchfield to forget the deal because it was too dangerous. Birchfield later decided to cooperate with federal authorities following Hatcher's arrest.
 
 
 13
 On September 6, 1988, the appellant was taken into custody and charged with multiple violations of federal law. The United States Magistrate, following a preliminary hearing on September 12, 1988, ordered the appellant detained and the case considered by a United States Grand Jury. Hatcher's appeal for a de novo hearing before the district court was denied. This court subsequently affirmed the detention order on November 18, 1988.[1]
 
 
 14
 On October 5, 1988, the appellant was indicted in a four-count indictment with conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride (in violation of 21 U.S.C. § 846), using a communication facility to facilitate a violation of the federal narcotics statutes (in violation of 21 U.S.C. § 843(b)), carrying a firearm during and in relation to the unlawful conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride (in violation of 18 U.S.C. § 924(c)(1)), and possessing two AR-15 automatic machine gun rifles, and one bolt action rifle with a silencer, not registered in the National Firearms Registration and Transfer Record (in violation of 26 U.S.C. §§ 5861(d), 5871).
 
 
 15
 A jury found Hatcher guilty on all four counts following trial in district court on January 23-24, 1989. Appellant appeared before the district court for sentencing on April 3, 1989. Pursuant to the Sentencing Reform Act of 1984, Hatcher received a sentence of seventy-five (75) months imprisonment for violation of 21 U.S.C. § 846, twenty-four (24) months imprisonment for violation of 21 U.S.C. § 843(b), and thirty-six (36) months imprisonment for violation of 18 U.S.C. §§ 5861(d), 5871. These sentences were ordered to be served concurrently. Hatcher received a five (5) year sentence of imprisonment for violation of 18 U.S.C. § 924(c)(1), to be served consecutive to the three concurrent sentences. The court also imposed a four (4) year term of supervised release following the appellant's release from prison.
 
 
 16
 This timely appeal followed.
 
 II.
 A.
 
 17
 When reviewing a jury's verdict under a sufficiency of the evidence standard, a court must consider all the evidence in a light most favorable to the prosecution. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Witness credibility is an issue to be left solely within the province of the jury, United States v. Schultz, 855 F.2d 1217, 1221 (6th Cir.1988), and substantial deference should be given to the trier of fact. United States v. Ayotte, 741 F.2d 865, 867 (6th Cir.), cert. denied, 469 U.S. 1076 (1984). A conviction should be affirmed if any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.), cert. granted, 479 U.S. 881 (1986), aff'd, 483 U.S. 171 (1987). This court has previously found that the appellant "bears a heavy burden" when insufficiency of the evidence is claimed. United States v. Vannerson, 786 F.2d 221, 225 (6th Cir.), cert. denied, 476 U.S. 1123 (1986).
 
 
 18
 Three elements are required to establish the appellant's guilt pursuant to 21 U.S.C. § 846: (1) a conspiracy existed; (2) the accused knew of the conspiracy; and (3) the accused knowingly and voluntarily joined the conspiracy. United States v. Christian, 786 F.2d 203, 211 (6th Cir.1986). Overt action in furtherance of a narcotics conspiracy need not be proved. United States v. Dempsey, 733 F.2d 392, 396 (6th Cir.), cert. denied, 469 U.S. 983 (1984). Instead, circumstantial evidence may be used to impute a defendant's knowledge and voluntary participation in a conspiracy. United States v. Reifsteck, 841 F.2d 701, 704 (6th Cir.1988). In fact, once the existence of a conspiracy has been established, only slight additional evidence is required to connect a particular defendant with it. United States v. Davis, 809 F.2d 1194, 1205 (6th Cir.), cert. denied, 483 U.S. 1007, 1008 (1987) (citing United States v. Hamilton, 689 F.2d 1262, 1275 (6th Cir.1982), cert. denied, 459 U.S. 1117 (1983)).
 
 
 19
 Hatcher spoke with Agent Monroe on several occasions to procure various weapons from the agent. The appellant agreed to exchange cocaine for the weapons. The appellant arranged with his supplier, the undisclosed "big guy," for delivery of the cocaine. The supplier furnished appellant with a cocaine price list which varied the cocaine's price to the quantity and frequency of cocaine dealings in the future. Though Hatcher wanted the specific details of the weapons exchange kept secret from his supplier, he is clearly acting as the middleman in the cocaine transaction by merely forwarding cash to his supplier in lieu of the weapons he personally desires. Hatcher is a coconspirator. This conspiracy is illustrated in the August 26, 1988 conversation between Hatcher and Agent Monroe that Monroe surreptiously recorded:
 
 
 20
 HATCHER: Uh, okay. One-time deal would be seventeen eight fifty. That's ten ... that's a thousand and fifty dollar an ounce. Two-time deal which would be seventeen thousand. That's thousand dollar an ounce and then like you said if you wanted it once a month or somethin', he'd put it on down there to nine fifty an ounce.
 
 
 21
 MONROE: Damn, I think they oughta take a little more on this time on that then.
 
 
 22
 HATCHER: Huh?
 
 
 23
 MONROE: I may be able to get a little bit more at nine fifty.
 
 
 24
 HATCHER: Uh huh. Well, see, that's what I say, see. Now he'll probably come on down a little more. You know what I mean?
 
 
 25
 MONROE: At that, at that right there, I might could talk to him to gettin' two or three maybe four more ounces on that. That's a damn good price right there.
 
 
 26
 HATCHER: But like I said now, you know. That's what he told me to find out. That's the reason I couldn't tell ya on the phone. Usually there's two or three sittin' there too, and they are nosey as hell.
 
 
 27
 Furthermore, the appellant enlisted Charles Birchfield as a coconspirator on September 5, 1988, the day before the cocaine transaction was to occur. Birchfield was enlisted to "cover [Hatcher's] back" during the exchange. Though Hatcher later determined that Birchfield's assistance was unnecessary, the crime of conspiracy cannot be undone simply by the parties abandoning their design absent proof of affirmative action to disavow or defeat the purposes of the conspiracy. United States v. Battista, 646 F.2d 237, 246 (6th Cir.), cert. denied, 454 U.S. 1046 (1981).
 
 
 28
 Although a conspiracy to distribute cocaine is unsuccessful, a conviction may nevertheless be appropriate. United States v. Schultz, 855 F.2d at 1221. Furthermore, the identity of a source of cocaine is unnecessary in the establishment of the essential elements of a conspiracy since one person can be convicted of a narcotics conspiracy with other persons whose identities are unknown. Rogers v. United States, 340 U.S. 367, 375 (1951). The evidence confirms that Hatcher was involved with an unidentified cocaine supplier and with Charles Birchfield. The three individuals entered into a conspiracy to distribute cocaine. Hatcher's recorded conversations with Agent Monroe, as well as Birchfield's testimony and the cocaine price list, substantiate this conclusion. Furthermore, "drug distribution conspiracies are often 'chain' conspiracies such that the agreement can be inferred from the interdependence of the enterprise." United States v. Schultz, 855 F.2d at 1221.
 
 
 29
 Appellant's contention that he was merely involved in a buyer/seller relationship, not a conspiracy, with his supplier is without merit. The following exchange between Hatcher and Agent Monroe on August 26, 1988 illustrates the conspiratorial nature of the cocaine transaction:
 
 
 30
 HATCHER: So you're gettin' seventeen ounces there? Sixteen thousand, one hundred and fifty dollars. That's nine hundred and fifty dollars an ounce.
 
 
 31
 MONROE: If I was to add two or three more to it, could he handle that? At that price?
 
 
 32
 HATCHER: Uh, yeah, I'd say he could. You know. I'd just have to ... I'd say he would, you know 'cause he said if it's more than just a one-time deal....
 
 
 33
 MONROE: Well, it will be.
 
 
 34
 HATCHER: You know, right there's what he told me to tell you. Right there's what he wrote down.
 
 
 35
 Hatcher argues that the conspiracy was improperly proved by his unsubstantiated statements made after the conspiracy was committed. This contention is similarly without merit. The appellant's statements made to the undercover agents prior to his arrest clearly show that Hatcher was involved in a conspiracy with his undisclosed cocaine supplier and with Charles Birchfield. These statements are corroborated by documentary evidence and by Charles Birchfield's testimony. This court has previously approved the use of hearsay statements by coconspirators to prove the existence of a conspiracy. United States v. Bourjaily, 781 F.2d at 542.
 
 
 36
 The appellant also contends that "Wharton's Rule" is applicable to the resolution of this case. "[A]n agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission." 1 R. Anderson, Wharton's Criminal Law and Procedure 191 (1957). This rule, however, does not apply where there is more than one seller or more than one buyer. United States v. Renfro, 620 F.2d 569, 575 (6th Cir.), cert. denied, 449 U.S. 902 (1980). Because Hatcher was a principle character in a conspiracy that included Hatcher, his undisclosed cocaine supplier, and Charles Birchfield, "Wharton's Rule" is inapplicable.
 
 
 37
 The district court determined that there was sufficient evidence to find the appellant guilty of conspiracy to distribute and possess with the intent to distribute cocaine. The district court's finding is not clearly erroneous.
 
 B.
 
 38
 To sustain a conviction for "facilitating" pursuant to 21 U.S.C. § 843(b), the government must prove three elements: (1) a knowing or intentional (2) use of a communication facility (3) to facilitate the commission of a drug offense. United States v. McGhee, 854 F.2d 905, 908 (6th Cir.1988). This third element contains the further requirement that the government prove the commission of the underlying substantive drug offense. United States v. Dotson, 871 F.2d 1318, 1321 (6th Cir.1989). The underlying substantive drug offense in the instant action is the conspiracy to distribute cocaine, which the government proved, supra. The applicable communication facility in this action is the telephone.
 
 
 39
 Hatcher contends that he telephoned only Agent Monroe and that Monroe is a government agent with whom the appellant could not conspire. This claim is without merit. 21 U.S.C. § 843(b) does not require that the conversations be between coconspirators. The conversations between the appellant and Agent Monroe violate § 843(b) if the conversations "facilitated" the conspiracy to distribute cocaine. United States v. Barnes, 681 F.2d 717, 724 (11th Cir.1982), cert. denied, 460 U.S. 1046 (1983). Hatcher's use of a telephone on September 6, 1988 to contact Agent Monroe to arrange the details concerning the cocaine exchange clearly facilitated the drug transaction and was in furtherance of the ongoing conspiracy. Because the district court's finding is not clearly erroneous, appellant's assignment of error must fail.
 
 C.
 18 U.S.C. § 924(c)(1) provides:
 
 40
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years.... Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.
 
 
 41
 18 U.S.C. § 924(c)(1) (Supp.1989). The term "drug trafficking crime" is defined for purposes of § 924(c)(1) as "any felony violation of Federal law involving the distribution, manufacture, or importation of any controlled substance...." 18 U.S.C. § 924(c)(2).[2]
 
 
 42
 The argument that the definition mentions only "distribution," "manufacture," and "importation," thereby excluding "possession" offenses, "has been universally rejected by the courts which have considered it." United States v. Henry, 878 F.2d 937, 943 (6th Cir.1989). "Possession" can be constructive as well as actual. Id. Section 924(c)(1) requires that the firearm be used or carried "during and in relation" to a drug trafficking offense. Id. "The legislative history of the 1984 amendment to section 924(c) indicates that the 'in relation to' element will be satisfied 'if from the circumstances or otherwise it could be found that the defendant intended to use the gun if a contingency arose or to make his escape." Id. at 943-44.
 
 
 43
 Moments after the undercover agents left H & H Motors with Hatcher's telephone pager, the appellant was arrested and a loaded firearm was found in his boot. The conspiracy to distribute cocaine was still in progress as demonstrated by the use of the telephone pager to facilitate the delivery of the cocaine. Hatcher possessed the firearm intending to have it available for possible use during the drug transaction. Actual use of the firearm, or the brandishing of the weapon, are not requirements for a conviction pursuant to this statute. United States v. Robinson, 857 F.2d 1006, 1010 (5th Cir.1988). It is irrelevant whether a defendant used the firearm in any affirmative matter so long as the firearm was available to provide protection to the defendant in conjunction with his drug trafficking. United States v. Raborn, 872 F.2d 589, 595 (5th Cir.1989).
 
 
 44
 This court recently applied the "fortress analogy" theory to a defendant brandishing a gun, holding that the weapon bears the same relationship to drug trafficking crimes as do weapons found hidden in a house:
 
 
 45
 In cases involving firearms found on premises under the control of a drug offense offender, the courts have developed a "fortress analogy" theory, which holds that if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used "during and in relation to" a drug trafficking crime.
 
 
 46
 United States v. Henry, 878 F.2d at 944.
 
 
 47
 Hatcher intended to have his pistol available during the conspiracy for protection, and possible use, during the cocaine transaction. The loaded weapon was concealed and quickly accessible. Because the district court's finding that Hatcher intended to have the weapon available during, and in conjunction with, the conspiracy to distribute cocaine is not clearly erroneous, the appellant's assignment of error must fail.
 
 D.
 
 48
 26 U.S.C. § 5861(d) provides: "It shall be unlawful for any person--to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5871 provides: "Any person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both."
 
 
 49
 It is uncontested that the two AR-15 rifles and the rifle silencer were not registered in the appellant's name. At issue, therefore, is whether the appellant had possession of the weapons. Possession may be either actual or constructive and it need not be exclusive but may be joint. United States v. Craven, 478 F.2d 1329, 1333 (6th Cir.), cert. denied, 414 U.S. 866 (1973).
 
 
 50
 Actual possession exists when a tangible object is in the immediate possession or control of the party. Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.
 
 
 51
 Id. Furthermore, both actual and constructive possession may be proved by direct or circumstantial evidence. Id.
 
 
 52
 When the undercover agents brought the weapons to H & H Motors, Hatcher instructed them to follow him across the road to a house that he leased. Hatcher unlocked the house, instructed the agents to hide the weapons under a bed, and locked the door to the house after the three men had finished unloading the weapons. The appellant leased and controlled the locked house that held the weapons. The weapons remained in the house until Hatcher informed the agents that the weapons would have to be moved. This court has held that the length of time of possession is not material, nor is it a defense that the possessor does not know that the weapons are not registered or that they are required to be registered. United States v. Sanders, 462 F.2d 122, 124 (6th Cir.1972).
 
 
 53
 The appellant jointly and constructively possessed the weapons when these items were placed inside a locked residence over which he exercised dominion and control. Because the district court's finding that there was sufficient evidence to support the appellant's conviction for possession of unregistered weapons is not clearly erroneous, appellant's last assignment of error similarly fails.
 
 
 54
 For the foregoing reasons, the appellant's conviction is AFFIRMED.
 
 
 
 [1]
 United States v. Hatcher, 863 F.2d 50 (6th Cir.1988) (Table)
 
 
 [2]
 Section 924(c)(2) has been amended and now reads: "[T]he term 'drug trafficking crime' means any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. § 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C.App. § 1901 et seq.)." Anti-Drug Abuse Act of 1988, Pub.L. No. 100-690, § 6211, 102 Stat. 4360