**UNITED STATES of America, Plaintiff,**

**v.**

**Michael ALEXANDER, Defendant.**

**Cr. A. No. 1:90CR0007.**

United States District Court,
N.D. Ohio, E.D.

April 2, 1990.

Mark McClain, Asst. U.S. Atty., Cleveland, Ohio, for plaintiff.

David A. Snow, Geoffrey M. Schumer, James R. Willis, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Michael Alexander has moved for review of Magistrate Bartunek's order that he be detained pending trial on two charges of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Applying 18 U.S.C. § 3142, and more specifically the presumption found in § 3142(e) against release of those charged with serious drug offenses, the magistrate determined that Alexander presents both a risk of flight and a risk of danger to the community. On Wednesday, April 4, 1990, the Court held a hearing on Alexander's motion for review. The Court received evidence, heard testimony and heard the arguments of counsel. Upon consideration, the Court finds that Alexander's motion is not well taken.

### I.

Having listened to the tape recordings of the December 18, 1989 hearing before Magistrate Bartunek, and having heard the testimony of Alexander's father, Michael Alexander, Sr., the Court makes the following findings of fact.

Michael Alexander, Jr. is 25–26 years old. He was born in Cleveland, but, because his parents separated, he lived between the ages of 5 and 15 in New York with his mother. At age 15 he returned to Cleveland where his father had been continually residing. He attended and graduated from the J.F. Kennedy High School located at Lee and Harvard Roads in the City of Cleveland. He lived with his aunt, Dolores Price, during these years. His mother continues to reside in New York.

Between the ages of 18 and 25 Alexander has worked sporadically. For an unspecified period of time, he worked for a brass company. He has also worked intermittently for his father's home rehabilitation business. According to his father, he also worked for a construction company with involvements in real estate. He began by driving a truck, and was promoted due to his training in the real estate field. The testimony did not specify the nature of the business, the duration of Alexander's employment, or his eventual duties. In November or December of 1989, Alexander was certified as a real estate agent. According to the testimony, however, he has never worked as such. He is not presently employed.

Michael Alexander has two children, a son of approximately four years who bears his name, and a daughter of approximately three years. His son's mother has custody of that child, although he visits with the child and "quite often" brings the child to visit other family members, including Michael Alexander, Sr. Alexander is married to the mother of his daughter. Until recently, they lived on Lakeshore in Euclid. Alexander's wife and daughter now live with his wife's mother. The testimony was not clear as to the level of support that Alexander provides either of his children.

According to his father, Michael Alexander has a loving relationship with his wife and an "excellent" relationship with his family. The family has lived in Cleveland for some time and Alexander has over 500 relatives in the area. He has religious ties to the community here, and does little travelling out of state. Also according to his father, Alexander has no health, alcohol or drug problems. He does not have a prior criminal record.

On December 8, 1989, City of Cleveland police officers in the area of East 102nd Avenue and St. Clair observed Alexander driving fast and erratically. When they pursued him and directed that he stop, he attempted to evade them at high speed. Upon finding himself in a dead end street, he fled on foot and was seen to drop a bag. When the officers retrieved it, they found that the bag contained approximately one and one-half pounds of cocaine.

The officers apprehended Alexander and attempted to learn his name and address. He gave numerous false addresses, including that of an unoccupied building. Upon searching him, the officers found an insurance card with his address. The officers later searched his residence and found a loaded semi-automatic weapon, more cocaine and approximately $70,000 in cash. Although the Court received no medical or other corroborating evidence, Alexander's father testified that Alexander was severely beaten by the arresting officers during the arrest and while in their custody.

Alexander was charged in an indictment dated January 8, 1990, with two counts of possession with intent to distribute a controlled substance (cocaine) in violation of Title 21, Section 841(a)(1), United States Code. He faces, under Title 21, Section 841(b)(1)(B)(ii), United States Code, penalties of five to forty years imprisonment and/or $2,000,000 on the first count, and five to twenty years imprisonment and/or $1,000,000 on the second count.

Magistrate Bartunek held a pre-trial detention hearing on December 18, 1989. Having received the government's evidence, he ordered Alexander detained. His December 20, 1989 written opinion explained that the detention order was based on: the "overwhelming and certainly clear and convincing" evidence that Alexander committed the offense charged (Dec. 20, 1989 order at 4); the rebuttable presumption contained in 18 U.S.C. § 3142(e) that no conditions of release will secure the appearance of one charged with a drug offense carrying a maximum punishment of ten or more years in imprisonment; his findings that the evidence proffered by the defendant would not rebut this presumption, and that the other relevant facts all supported the government's motion that Alexander be detained.

At the April 4, 1990 hearing before this Court, Alexander's father stated that he would secure his son's appearance with a bond on his house, which is unencumbered, and that family members would cooperate should the Court impose conditions on Alexander's release.

II.

The district court reviews *de novo* the magistrate's order of pretrial detention. *United States v. Smith,* 87 F.R.D. 693 (E.D.Calif.1980).

Title 18 U.S.C. § 3142 governs pretrial release and provides that a defendant shall be released pending trial as long as conditions can be set that will reasonably assure the defendant's appearance and community safety. The judicial officer must determine that no set of conditions can be fashioned to control the risk of flight or danger before ordering the defendant detained. The government bears the burden of proving that the defendant should be detained. *E.g., United States v. Hurtado,* 779 F.2d 1467 (1985), *reh'g den.,* 788 F.2d 1570 (11th Cir.1986). Risk of either flight or danger can support detention. *United States v. King,* 849 F.2d 485, 488 (11th Cir.1988). Risk of dangerousness must be proved by clear and convincing evidence; risk of flight must be proved by a preponderance of the evidence. *Id.; United States v. Chimurenga,* 760 F.2d 400, 405 (2nd Cir.1985).

Most relevant to this case is the rebuttable presumption contained in 18 U.S.C. § 3142(e) that such conditions cannot be found for defendants charged with serious drug offenses. If the defendant produces evidence to rebut this presumption, it does not drop from the case, but remains as a factor to guide the judicial officer's decision. *E.g., United States v. Hurtado,* 779 F.2d at 1467; *United States v. Diaz,* 777 F.2d 1236, 1238 (7th Cir.1985). Thus, the presumption does not relieve the government of the ultimate burden of proof, *United States v. Martir,* 782 F.2d 1141 (2nd Cir.1986), but represents the belief of Congress that in most such cases there is an increased risk of flight and/or danger, specifically danger that the defendant will promptly return to drug trafficking. *E.g., United States v. Hare,* 873 F.2d 796, 798 (5th Cir.1989); *United States v. Jessup,* 757 F.2d 378 (1st Cir.1985).

Factors to be considered in this evaluation are set forth in 18 U.S.C. § 3142(g). Factors relating to the charges against the defendant are treated in 18 U.S.C. § 3142(g)(1) and (2). These include the nature of the offense, the surrounding circumstances, and the weight of the evidence against the defendant. Section 3142(g)(1) specifically notes the importance of "whether the offense is a crime of violence or involves a narcotic drug." Section 3142(g)(3) concerns the defendant's history and characteristics. Relevant features under 3142(g)(3)(A) include the person's character, health, family ties, employment, financial status, length of residence in the community, history of alcohol or drug abuse or criminal activity, and record of appearances for court proceedings. Section 3142(g)(3)(B) concerns whether the defendant was involved in any capacity with the criminal justice system at the time of the offense or arrest. Section 3142(g)(4) concerns the risk of danger to the community and the suitability of any collateral that the defendant would offer to secure a bond.

### III.

Applying these legal standards to the facts of this case, the Court makes the following conclusions of law.

■ With respect to dangerousness, the Court finds that the amount of cocaine found incident to Alexander's arrest and the search of his residence, together with an amount of cash that would be well-nigh impossible to explain even if he had been consistently employed at a high-paying job, constitute clear and convincing evidence that he has been engaged in the distribution of cocaine. Under relevant caselaw, it is thus proper for this Court to conclude that there is a serious risk that Alexander would return to this activity if released pending trial, to the peril of the community.

■ With respect to risk of flight, which must be proved by a preponderance of the evidence, the Court agrees with Alexander that an important distinction may exist between flight to avoid arrest in the first instance, and flight to avoid trial. Alexander is also correct to assert that his lack of prior criminal record and his family ties in the area are relevant under 18 U.S.C. § 3142(g).

Weighing against these factors, however, is the fact that Alexander spent many of his formative years with his mother who was and is still in New York. It appears that his connections to Cleveland are less than his father first asserted, and that he would have at least one destination to head for should he desire to leave this area. Moreover, with respect to his personal stability, the Court found it quite troubling that he has never maintained consistent employment. In light of the large amount of cash found at his residence, this factor portends even less favorably.

The evidence concerning his family life was conflicting. While Michael Alexander, Sr. obviously cares for his son greatly and spoke on his behalf with sincerity, the evidence of record does not make clear the extent of the regular contact between father and son. Given Mr. Alexander's initial suggestions that he had raised Michael Alexander, Jr., and had done so in Cleveland, the Court was not impressed to learn that Michael Alexander, Jr. had actually spent much of his childhood in New York, and then, upon his return to Cleveland, was raised by an aunt. The Court was also troubled by Mr. Alexander's lack of familiarity with his son's various forms of employment.

Likewise, while the appearance of Michael Alexander, Jr.'s wife and daughter in the courtroom certainly suggested familial ties here, the testimony in this Court and the evidence produced before the magistrate did not yield, as would be probative under the statute, a picture of long-term domestic stability. The evidence was simply not clear as to the nature of the relationship between Alexander and his wife and daughter, including the extent to which he had been providing them financial support. Nor did it make clear whether he maintains regular contact and provides financial support to his son and that child's

mother. All of this evidence helps Alexander in some degree, but injures him as well.

Finally, as the Court noted at the hearing, the fact that Alexander has no prior criminal record does help, but also hinders him. It may weigh in his favor with respect to his personal character, but at the same time it precludes him from showing a history of reliability with respect to court appearances. The Court also notes that the seriousness of the offense with which Alexander is charged, and the heavy penalties attendant upon conviction, are strong motivation for any person to consider attempting to avoid trial.

Given the preponderance of the evidence standard that governs with respect to risk of flight, the Court cannot find that the evidence of familial and community ties outweighs the government's showing that Alexander has never held steady work, has had unexplained amounts of cash on hand, and has close family located outside of this jurisdiction.

### IV.

Accordingly, the Court concludes that Alexander's motion for release pending trial must be denied.

IT IS SO ORDERED.