UNITED STATES of America, plaintiff,

v.

Sayyed YAMINI, Defendant.

No. C2–99–149.

United States District Court,
S.D. Ohio,
Eastern Division.

Feb. 24, 2000.

**ORDER**

MARBLEY, District Judge.

This cause comes before the Court on Defendant Sayyed Yamini's Motion for Revocation of Detention Order. Defendant requested an oral hearing pursuant to 18 U.S.C. § 3142 to review Magistrate Judge Kemp's October 7, 1999, Detention Order. The Court held oral argument on the Motion on December 3, 1999. For the reasons set forth below, the Court **DENIES** Defendant's Motion.

## I. Introduction

On October 4, 1999, Defendant appeared before Magistrate Judge Kemp for a preliminary examination and detention hearing. At the close of the hearing, Magistrate Judge Kemp determined that there was probable cause to believe that Defendant committed the crimes described in the criminal complaint, and ordered Defendant to be detained without bond pending further proceedings. At that time, Magistrate Judge Kemp advised Defendant of his right to seek review of the Detention Order by a United States District Court Judge pursuant to 18 U.S.C. § 3145(b).

Defendant was indicted on October 26, 1999, for two counts of unarmed bank robbery.[1] Count One alleges that on or about September 3, 1999, Defendant robbed a Fifth Third National Bank and took approximately $2240; and Count Two alleges that on or about September 4, 1999, Defendant robbed a different Fifth Third National Bank and took approximately $5430. This Court arraigned Defendant on November 19, 1999. Defendant presently remains in detention.

Defendant filed his Motion for Revocation of Detention Order on November 19, 1999. Defendant argues that: (1) he has significant ties to the community, including a suitable custodian in his fiancée, Brenda Morehouse; (2) he has a record of minor traffic offenses but no felony convictions; (3) the Government's case against him is

---

1. At the initial appearance hearing before Magistrate Judge Kemp on October 1, 1999, the charges originally were two counts of armed robbery.

weak; and (4) he poses no danger to the community. In light of these arguments, Defendant contends that some form of conditional release, such as electronic monitoring, would be just and proper.

In its response, the Government argues that there is no basis for overturning Magistrate Kemp's decision and, if anything, the weight of evidence against Defendant has only increased since the detention hearing. Further investigation has led the Government to believe that Defendant may be responsible for fifteen robberies in Franklin County, Ohio, committed between August 3, 1999, and September 24, 1999. The Government proffers that, including the two bank robberies with which Defendant is charged, the fifteen robberies have strikingly similar facts: (1) the perpetrator was a black male who passed a demand note to an individual teller; (2) the demand note often indicated that the robber was dying of a terminal illness (AIDS or cancer);[2] (3) the perpetrator in most cases threatened to kill one or more persons if his demand was not met, and pointed an object out from under his clothing to suggest that he had a gun; and (4) the perpetrator often requested specific denominations of money.[3] In addition, the Government argues that there is eyewitness identification and physical evidence (*i.e.*, fingerprints) that link Defendant to the crimes. Moreover, no bank robberies with similar facts have occurred since Defendant's arrest on October 1, 1999. The Government avers that Defendant threatened the lives of several people in a two-month time span and is likely to threaten witnesses' lives upon his release.

## II. Analysis

### A. Detention Pending Trial

Section 3142 of the Title 18 of the United States Code governs the release or detention of a defendant pending trial. Pursuant to 18 U.S.C. § 3142(f)(2), "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions [of release] ... will reasonably assure the appearance of the person as required and the safety of any other person and the community ... upon motion of the attorney for the Government ... in a case that involves ..." a "serious risk" of the defendant's flight or a "serious risk" that the defendant "will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). The judicial officer shall consider a number of factors at the detention hearing:

(1) [t]he nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal State or local law; and

---

**2.** At the hearing held to consider Defendant's Motion for Revocation of Detention Order on December 3, 1999, Federal Bureau of Investigation Agent Tim Creedon stated that 12 of the 15 demand notes contained declarations that the perpetrator was dying of a terminal illness. As for the other three robberies, Agent Creedon stated that the tellers were not given the opportunity to read the full text of the demand note.

**3.** The denominations demanded were $100, $50, and $20 bills.

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). If the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the "judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). The judicial officer's determination, pursuant to § 3142(e), "shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f). The detainee then may "file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the [detention] order." 18 U.S.C. § 3145(b). Once the motion is presented to the district court, "[t]he motion shall be determined promptly." 18 U.S.C. § 3145(b).

### B. Standard of Review

#### 1. The Sixth Circuit and *De Novo* Review

The Court first must determine the proper standard of review of the Magistrate Judge's detention order. The Sixth Circuit has not addressed this question, although *United States v. Hazime*, 762 F.2d 34 (6th Cir.1985), peripherally speaks to the issue. *See id. at* 36. In *Hazime*, the district court judge "not[ed] that a clearly erroneous standard of review of the magistrate's decision was probably correct, . . . [but] held a *de novo* hearing on the detention order." *See id.* The Court of Appeals did not disturb this procedure but also did not mandate a particular standard

---

**4.** That same district court later ruled that *de novo* review obviates the need to proceed with a clear error analysis because the court's agreement with the magistrate judge's conclusion makes the lack of clear error self-evident. *See United States v. Chambers*, No. 87–80933, 1988 U.S. Dist. LEXIS 17758, at *1–*2 (E.D.Mich. July 26, 1988).

of review on the district court level. *See id.* at 36–37.

In the Sixth Circuit, the district courts have followed various procedures to review a magistrate judge's detention order: (1) *de novo* review, *see United States v. Williams*, 948 F.Supp. 692, 693 (E.D.Mich. 1996) (reversing a magistrate judge's bond determination based on its *de novo* review of the detention order) (citations omitted); *United States v. Alexander*, 742 F.Supp. 421, 423 (N.D.Ohio 1990) (reviewing the magistrate judge's detention order *de novo* ) (citing *United States v. Smith*, 87 F.R.D. 693 (E.D.Cal.1980)); (2) clear error review pursuant to a *de novo* hearing, *see United States v. Leshman*, No. 85–80829, 1988 U.S. Dist. LEXIS 18198, at *1 (E.D.Mich. Apr. 22, 1988); and (3) denial of any hearing at all, *see United States v. Hatcher*, 892 F.2d 1044, 1990 WL 808 (6th Cir.1990). The *Williams* and *Alexander* courts adopted purely a standard of *de novo* review. *Williams*, 948 F.Supp. at 693; *Alexander*, 742 F.Supp. at 423. The *Leshman* court employed a hybrid approach in which the court reviewed for clear error while still conducting a *de novo* hearing. *Leshman*, 1988 U.S. Dist. LEXIS 18198, at *1.[4] In yet another iteration of the standard of review question, the Sixth Circuit affirmed a district court's denial of a defendant's "appeal for a *de novo* hearing before the district court." *Hatcher*, 1990 WL 808, *3. Thus, the district courts of the Sixth Circuit have taken several different approaches to the question of the proper standard of review.

#### 2. *De Novo* Review in Other Circuits

The majority view appears to favor the district court's *de novo* review of detention orders by magistrate judges issued pursuant to § 3142.[5] *See, e.g., United States v.*

---

**5.** A number of district courts in other circuits have held that *de novo* review is proper. The courts based this conclusion on the statutory language of § 3145(b) and the similarity of that language to the predecessor statute, § 3147 of the Bail Reform Act of 1966, 18 U.S.C. § 3147, where *de novo* review was proper. *See United States v. Marzullo*, 780 F.Supp. 658, 660 (W.D.Mo.1991) (finding that

*Gonzales,* 149 F.3d 1192, 1998 WL 321218, \*\*1–2 (10th Cir. June 5, 1998) (per curiam) (affirming judgment of district court that employed *de novo* standard of review); *United States v. Clark,* 865 F.2d 1433, 1436 (4th Cir.1989) ("A defendant ordered detained by a magistrate may seek *de novo* review in the district court.") (citing *United States v. Williams,* 753 F.2d 329, 333 (4th Cir.1985)); *United States v. Hurtado,* 779 F.2d 1467, 1481 (11th Cir.1985) ("[w]e follow suit [of a number of other courts] and require that our district courts undertake de novo review of the pretrial detention determinations of the magistrates"); *United States v. Fortna,* 769 F.2d 243, 249 (5th Cir.1985) ("When the district court … acts on a motion to revoke or amend a magistrate's pretrial detention order, the court acts *de novo* ….") (citations omitted). *De novo* review in this context means an independent determination based on a less deferential standard than "clear error." *See, e.g., United States v. King,* 849 F.2d 485, 490 (11th Cir.1988) ("[T]he district court must conduct an independent review to determine whether the magistrate properly found that pretrial detention was necessary.") (explaining further the standard of review set forth in *Hurtado,* 779 F.2d at 1480–81); *United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985) ("In our view a district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgement of the magistrate, but reach its own independent conclusion."); *United States v. Delker,* 757 F.2d 1390, 1394 (3d Cir.1985) (finding that the district court's "independent determination" of the defendant's eligibility for release was "correct").

■ Since it is the court of original jurisdiction, the district court is primarily responsible for resolving the case, whereas magistrate judges usually assume a preliminary role in pre-trial release or detention determinations. *See United States v. Hurtado,* 779 F.2d 1467, 1481 (11th Cir. 1985). The district court, therefore, should not defer to the magistrate judge's ultimate conclusion, even if "the whole process [in the district court] … [does not] start from scratch, as if the proceedings before the magistrate had never occurred." *United States v. Koenig,* 912 F.2d 1190, 1192 (9th Cir.1990). Rather, "[t]he point is that the district court is to make its own 'de novo' determination of facts, whether different from or an adoption of the findings of the magistrate." *Id.* at 1193. Thus, while the district courts are not required to engage in a plenary procedure pursuant to § 3145(b), the circuit courts that have addressed the standard of review agree that some independent review is required.

The structure of § 3142 also supports the process of *de novo* review. In an *en banc* decision supporting the district court's *de novo* review, the Eight Circuit held that § 3145(b) "requires a progression from one choice to the next in a judicial officer's determination of whether pretrial detention is called for." *United States v. Maull,* 773 F.2d 1479, 1482 (8th Cir.1985) (citation omitted). The court reasoned that § 3142 required the judicial officer first to determine whether release on personal recognizance or an unsecured bond is proper and then to consider progressively more restrictive conditions of release—all before reaching the determination that detention is the only means reasonably to assure the defendant's appearance or the safety of others. *See id.*

the language of § 3145 indicates that the district court should review the magistrate judge's detention order *de novo* ); *United States v. Moore,* 607 F.Supp. 489, 500 (N.D.Cal.1985) (finding that § 3145(b) is essentially the same as § 3147 of the Bail Reform Act of 1966) (citation omitted). Other

courts have held that the district court has a "duty" to review the magistrate judge's detention *de novo. United States v. Ramey,* 602 F.Supp. 821, 822 (E.D.N.C.1985) (citation omitted). These district court decisions point to an overall trend towards *de novo* review.

The court concluded that meaningful *de novo* review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge. *See id.* Thus, *de novo* review is the appropriate standard to assure that the district court can carry out its duties under § 3145.

In the absence of a district court's *de novo* review, a Court of Appeals may not have sufficient information to carry out its duty of prompt determination of appeals from release or detention orders under § 3145(c). Regarding release before judgement of conviction in a criminal case, Rule 9 of the Federal Rule of Appellate Procedure states: "[t]he district court must state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case." FED. R.APP. P. 9(a)(1). Further, "[a] party appealing from the order must file with the court of appeals a copy of the district court's order and the court's statement of reasons as soon as practicable after filing the notice of appeal." *Id.* The circuit courts have noted that *de novo* review is consistent with their need for a sufficient record, so that the circuit courts can dispose of the appeal "in a speedy fashion." *Delker,* 757 F.2d at 1394; *see also Hurtado,* 779 F.2d at 1481 ("[T]he fact that the Rule [9] clearly requires additional written findings by 'the district court' suggests that an independent review is required."); *Maull,* 773 F.2d at 1482 ("[T]he requirement of Rule 9 could not effectively be met without *de novo* determinations [by the district court]."). The nature and requisite speed of the appeals process under Rule 9 is consistent with *de novo* review on the district court level.

### 3. Legislative History and § 3147

As noted above, § 3145 bears a resemblance to its predecessor statute, § 3147 of the Bail Reform Act of 1966. 18 U.S.C. § 3147. The court in *United States v. Thibodeaux,* 663 F.2d 520 (5th Cir.1981), articulated the appropriate standard of review under § 3147:

> The statutory scheme adopted in 18 U.S.C. § 3147 confers a responsibility on the district court to reconsider the conditions of release fixed by another judicial officer . . . as unfettered as it would be if the district court were considering whether to amend his own action. He is not constrained to look for abuse of discretion or to defer to the judgement of the prior judicial officer.

663 F.2d at 522; *see also Koenig,* 912 F.2d at 1192 (citation omitted); *Hurtado,* 779 F.2d at 1481 (citation omitted); *Maull,* 773 F.2d at 1481 (citation omitted); *Delker,* 757 F.2d at 1395 (citation omitted). The case law adopts the standard appropriate under the predecessor statute—*de novo* review.

According to the legislative history of § 3145, the statute is "based in part on . . . [§ ] 3147." S.REP. No. 98–225, at 29, *reprinted in* 1984 U.S.C.C.A.N. 3212. The legislative history reflects two substantive changes to § 3147:(1) permitting review of all release and detention orders, whereas § 3147 only permitted review of detention and conditional release and permitted "appeals to the court of appeals . . . only after the defendant has sought a change in the conditions from the trial court;" and (2) authorizing the government, as well as the defendant, "to seek review and appeal of release decisions." *Id.* at 29–30, *reprinted in* 1984 U.S.C.C.A.N. 3212–13. The legislative history indicates that § 3145 effects no other substantive changes to § 3147. *See id.* Circuit courts have taken the silence of Congress on any other substantive changes to mean that no other changes were intended. *See Delker,* 757 F.2d at 1394–95; *see also Koenig,* 912 F.2d at 1192 (citing *Delker,* 757 F.2d at 1394; *Hurtado,* 779 F.2d at 1481); *Hurtado,* 779 F.2d at 1481 ("The 1984 Act works no modification of either the two-part review of the 1966 Act or the practice that the Fifth Circuit and a number of other courts saw fit to follow. Congress was undoubtedly aware

of this court-made requirement and chose not to undo it.") (citations omitted); *Maull*, 773 F.2d at 1482 (citing *Delker*, 757 F.2d at 1394–95). Thus, the appropriate standard of review for the district court under the predecessor statute, § 3147, also is appropriate under § 3145. *See Delker*, 757 F.2d at 1395.

The Court has considered the decisions of other Circuits and within this Circuit, the legislative history of § 3145, and the arguments of the parties and concludes that *de novo* review of Magistrate Judge Kemp's detention order is the appropriate standard of review.

### C. Magistrate Judge's Decision

Pursuant to the Government's request, the Court has incorporated by reference the audio tape recordings of the detention hearing before Magistrate Judge Kemp on October 4, 1999. Magistrate Judge Kemp made several factual determinations in the detention hearing which was consistent with the factors to be considered under § 3142(g). Magistrate Judge Kemp concluded that Defendant has been charged with and/or linked to a string of bank robberies committed in a two-month period. The weight of the evidence is heavily in the Government's favor, including similarities in the robbery demand notes, fingerprint evidence, and 90% positive witness identification. Magistrate Judge Kemp viewed surveillance photographs from some of the uncharged robberies and noted that they bore a strong resemblance to Defendant. In one of the uncharged robberies, the getaway vehicle was identified as a white 1990 Chrysler with damage near the driver's side rearview mirror. Brenda Morehead, Defendant's fiancée, owns a white 1991 Pontiac with damage in the same area. From this information, Magistrate Judge Kemp found that Defendant likely had committed even more robberies than the two with which he was charged.

Magistrate Judge Kemp also considered information from the pretrial services report. The report indicated a number of factors in Defendant's background consistent with detention pending trial. Defendant has lived in Columbus for a number of years but has little verifiable employment history, and it appeared that most of Defendant's income came from seasonal self-employment. He has few family ties in the area. Defendant reported frequent and recent use of crack cocaine. Although Defendant appeared to have little criminal history other than traffic offenses, he failed to appear in court in connection with those offenses on six different occasions. As noted in the detention order, Magistrate Judge Kemp concluded that there is a danger to the community because evidence links Defendant to at least two, and as many as fifteen, bank robberies in which the perpetrator threatened to harm a number of people. Thus, Magistrate Judge Kemp found the danger to the community was too great to merit Defendant's release under any condition.

### D. The Court's *De Novo* Hearing

■ The Court heard arguments and evidence on the Motion on December 3, 1999, and reviewed *de novo* Magistrate Judge Kemp's detention order. Since the grand jury had found probable cause to indict Defendant, the Court held that there was no need for the Government to establish probable cause. The Government did have, however, the burden of proof to show that Defendant should be detained. The Court assessed the evidence presented at the hearing pursuant to the factors outlined in § 3142(g): "nature and circumstances of the offense charged," "the weight of the evidence" against Defendant, "the history and characteristics" of Defendant, and "the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release." 18 U.S.C. § 3142(g)(1)—(3)(A), (g)(4).

At the hearing, FBI Special Agent Creedon testified that he is investigating fifteen robberies, including the two with which Defendant is charged, in which the perpe-

trator used a similar pattern of activity or *modus operandi*. The perpetrator was fairly consistently described as a black male, age 50 to 60, height of five foot eight inches to six foot two inches, having a heavy build, and weighing from 180 to 220 or 225 pounds. The demand note contained similar elements including: a threat to kill either the victim teller or other people in the bank, a statement that the robber was dying of cancer or AIDS, and a request for specific denominations of money ($100, $50, and $20 bills). The perpetrator often indicated that he had a weapon. Agent Creedon also testified that there had been no robberies committed with the same *modus operandi* since October 1, 1999, the date of Defendant's arrest, and that independent witnesses had identified Defendant as the perpetrator from surveillance photographs. In addition, photo arrays have produced positive identifications of the Defendant in as many as five additional robberies. Upon the Court's questioning, Agent Creedon opined that Defendant could pose a danger to the community. Agent Creedon's opinion was based on the perpetrator's threatening to kill the tellers and other persons in the bank at the time of the robbery.

Defense counsel argued that there was a paucity of evidence against the Defendant produced at the detention hearing before Magistrate Judge Kemp. Counsel also noted that the Defendant has yet to be charged with the other thirteen bank robberies, even though he has been detained since October 1, 1999, and that the evidence of the robberies with which Defendant was charged was rather weak. For example, upon searching Defendant's home and car, the Government failed to recover any of the clothes, hats, or weapons that the perpetrator allegedly used in the robberies. Defendant also proffered the testimony of Ms. Morehead to demonstrate her suitability as a custodian.

In addition to the *de novo* hearing, this Court has reviewed an Addendum to the Pretrial Services Report. The Addendum discusses Defendant's significant criminal history in Illinois and Georgia that spans nearly fifteen years.[6] The Defendant was charged with crimes of theft, fraud, and violence (*i.e.*, battery and aggravated assault). The disposition of most of these offenses is unknown; however, Defendant was convicted in 1974 in Skokie, Illinois, of simple battery and sentenced to two years of probation.

The Court has weighed both the questions of risk of flight and dangerousness to the community in reaching its conclusion to continue to detain Defendant. As to flight risk, Defendant has failed to appear in court on less serious charges on at least six prior occasions. In this case, he is charged with multiple bank robberies, in which he allegedly threatened to kill several people. It is a realistic assumption that he may fail to appear on the present more serious charges with dire sentencing consequences, if he failed to appear on less serious charges. Moreover, Defendant has family in other states, tenuous ties to this community, and is unemployed currently.[7] Under all of these circumstances, there is a risk of flight.

As to dangerousness, in the robberies for which Defendant has been indicted, Defendant is alleged to have threatened to kill and to injure a number of persons. Moreover, Defendant now has a criminal record in three states, which includes charges of aggravated assault and simple battery. On these bases, the Court concludes that the threat to the safety of other persons and the community is great.

Thus, under *de novo* review, this Court finds that detention is necessary to assure Defendant's appearance and to assure the safety of other persons and the community.

6. The Defendant's criminal record reflects a number of different charges from 1968 through 1983.

7. The Court acknowledges that Defendant has lived in Columbus since 1989.

### III. Conclusion

. For the foregoing reasons, the Court **DENIES** Defendant's Motion for Revocation of Detention Order.

**IT IS SO ORDERED.**