UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony BATTISTA (79–5165) T. Anthony Arnone (79–5257) Louis Peraino (79–5258) Bryanston Distributors, Inc. (79–5259) Gerard Damiano Film Productions, Inc. (79–5260), Defendants-Appellants.

Nos. 79–5165, 79–5257 to 79–5260.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 21, 1980.

Decided April 6, 1981.

Robert E. Smith, Atlanta, Ga., for Anthony Battista and T. Anthony Arnone.

Phillip E. Kuhn, Finley, Stein, Kuhn, Bienvenu, Kuhn & Schwartz, Memphis, Tenn., for Louis Peraino, Bryanston Distributors, Inc., and Gerard Damiano Film Productions, Inc.

W. J. Michael Cody, U. S. Atty., Robert M. Williams, Asst. U. S. Atty., for the U. S.

Before WEICK, LIVELY and KENNEDY, Circuit Judges.

WEICK, Circuit Judge.

Defendants have appealed to this court from the judgment of conviction and sentence entered by the district court upon a verdict of guilty returned by a jury in their second trial on an indictment charging them with conspiracy to violate the obscenity statutes, 18 U.S.C. § 1462 and § 1465 by transporting the obscene film Deep Throat

in interstate commerce.[1] Three of the defendants who were tried, Angelo Miragliotta, Anthony Novello, and Mario De Salvo were found not guilty and the charges were dismissed as to them. The defendants found guilty were sentenced as follows: Louis Peraino, 3 years, all but 6 months suspended and a fine of $10,000; Gerard Damiano Film Productions, Inc., fined $10,-000; Bryanston Distributors, Inc., fined $10,000; T. Anthony Arnone, 2 years with all but 5 months suspended and a fine of $3,000; Anthony Battista, 2 years with all but 2 months suspended and fined $2,000; Carl R. Carter, imposition of sentence suspended, 5 years probation and fined $1,500; Mell Friedman, 4 months concurrent, 1 year probation and fined $3,000; Michael Cherubino, mistrial declared when jury was unable to agree, charges dismissed.

The appeals were consolidated for oral argument and were submitted to the court on 6 large appendices totaling 3033 pages, 121 transcripts, appellants' briefs raising many issues with subdivisions; the government's brief of 114 pages and lengthy oral arguments. It appears to us that these cases have been given very careful consideration by the district judge and also by the jury. As indicated above, one defendant was given probation and fined $1,500, the sentences of imprisonment ranged from 2 months to 8 months and the fines ranged from $1,500 to $10,000 with most in the lower range.

On appeal, the appellants, jointly or severally, when applicable, have questioned the propriety of the proceedings before the grand jury; the constitutionality of the obscenity statute 18 U.S.C. 1465; the sufficiency of the evidence; the seizure of the film; the admission or exclusion of evidence; the closing argument of the Assistant United States Attorney; the court's instructions to the jury; the court's failure to discharge the jury prior to the Christmas recess; the sentencing of Louis Peraino.

As we will point out hereinafter none of these contentions has merit and the convictions will be affirmed.

## I

### The Grand Jury Proceedings.

In the district court, appellants attacked the grand jury proceedings by filing a motion to dismiss the indictment. Prior to the first trial, they made a similar attack which was denied by the court. They contend that the 1974 grand jury which returned the indictment (CR–124) was not properly constituted; that the grand jury did not have probable cause on the issue of obscenity to return the indictment; that the grand jury was not properly instructed on the law of obscenity.

The attack on the 1974 indictment would seem to be irrelevant and misplaced because it was supplanted by a superseding indictment in 1975 being CR–91.

The government strenuously objected to any inquiry into or invasion of the secrecy of the grand jury proceedings. The district court, however, out of an abundance of caution, conducted a lengthy evidentiary hearing. The government called the foreman of the grand jury, Herschel McElroy, who testified. The defendants called two F. B. I. special agents.

A stipulation of facts was approved by all parties and read into the record. The relevant provisions are as follows:

The grand jury which had been impaneled on January 22, 1973, which was extended to June 25, 1973, heard proof concerning the distribution of Deep Throat. On November 15, 1973, this 1973 grand jury viewed the entire film content of Throat at the Tri-State Theater, Memphis, Tennessee. On December 10, 1973, it heard testimony of approximately eight witnesses concerning the conspiracy involving the film.

1. Their conviction in the first trial was reversed by this court on the confession of error by the United States Attorney because of an erroneous instruction to the jury on including children in community standards, which was held improper by the Supreme Court subsequently in *Pinkus v. United States*, 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293 (1978).

In January of 1974 a new grand jury was impaneled. It continued the investigation of Throat and the conspiracy. Between January and the end of June, 1974, on more than eight occasions, it heard testimony from various witnesses. On May 8, 1974, it also went to view the film. After seeing 15 to 20 minutes of it, they decided they had seen enough and elected not to see the remainder.

On May 1, 1974, all three judges in this district entered an order extending the term of the 1974 grand jury until the *end* of December, 1974. By Court order of July 13, 1974 twelve members of the grand jury were replaced by twelve members that were newly qualified. Eleven of the original members of the 1974 grand jury elected to continue to serve for the second six month period.

During early August of 1974, the 1974 grand jury heard testimony of five witnesses concerning the conspiracy surrounding Throat. [From November 1973 through August of 1974 the grand jury heard testimony of more than sixteen witnesses; a number of witnesses cited above in certain cases were witnesses who were called back.]

On August 15, the 1974 grand jury returned the indictment in the case styled CR 74–124 naming as defendants Anthony Joseph Peraino, Louis Peraino, Robert J. DeSalvo, T. Anthony Arnone, Anthony Battista, Mario DeSalvo, Gerard Damiano Film Productions, Inc. and AMMA Corporation.

In January of 1975 a new grand jury was impaneled. It continued to hear proof concerning the investigation of the conspiracy involving Throat. On June 13, 1975, this grand jury returned a superceding indictment styled CR 75–91 naming as defendants each of the ones previously named in CR 74–124 and adding the following defendants: Herbert Nitke, Michael Cherubino, Joseph Peraino, Carl Carter, Mel Friedman, Herbert Streicher, Bryanston Distributors, Inc., Maines & Associates, Inc., and Plymouth Distributors, Inc.

Each of these three grand juries, 1973, 1974 and 1975, was given instructions regarding the law of the definition of obscenity by the Assistant United States Attorney handling the case. These instructions included the *Miller* test of obscenity. There is no recollection by anyone concerning whether or not children were included in the make up of the average person in the community as that phrase is applied to the definition of obscenity.

This stipulation expressly does not waive the United States' vigorous objection to this inquiry into the secrecy of the grand jury proceedings regarding this case and this stipulation is subject to any facts revealed at the hearing.

The 1975 grand jury did not see the movie Deep Throat. (Ap. 2951–57).

The indictment and conviction of Joseph Peraino and Plymouth Distributors is being reviewed separately in Appeal No. 79–5081.

Mr. McElroy served as foreman on the 1975 grand jury involved in the investigation of Deep Throat for the entire year. He had seen the movie and testified that two other members of the grand jury had seen it. The indictment was returned in June, 1975. The proof presented to the grand jury as to the sexual content of Deep Throat was the sworn testimony of an FBI Special Agent who read a detailed account of the movie including examples. The examples were oral sex; group sex; cunnilingus; and heterosexual intercourse. They clearly constituted hard core pornography. *United States v. Marks*, 520 F.2d 913 (6th Cir. 1975) *reversed in other grounds* 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977).

Mr. McElroy on cross-examination further described the testimony of the FBI special agent before the grand jury as follows:

It seemed to me he went into great detail to set each scene, the characters and exactly what they were doing down to the greatest detail. I was sitting there comparing it to the film I had seen not too many months earlier. I could not have sat there myself and written down any-

thing closer to what the film actually represented. (Ap. 2998).

\* \* \* \* \* \*

I couldn't believe that I was reliving scenes of the film as it went from scene to scene. There were some that asked me, some other jurors, that had not seen the film. They knew I had seen it, and I couldn't think of anything that wasn't included. (Ap. 3000).

\* \* \* \* \* \*

The district court properly denied the motion to dismiss.

■ In our opinion, it was not necessary for the district court to probe into the secrecy of the grand jury proceedings. There is a presumption of regularity which attaches to such proceedings and the defendants have a difficult burden to prove any irregularity. *Cf. United States v. Woods*, 544 F.2d 242, 250 (6th Cir. 1976), *cert. den.*, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977). The defendants proved no irregularity in the present case. The defendants must also demonstrate a particular need that outweighs the secrecy policy. *United States v. Proctor & Gamble*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958).

■ In our opinion, the indictment was valid on its face. Any error on the part of the district court in probing the secrecy of the grand jury proceedings occurred at the insistence of the defendants and was harmful only to the government.

■ The validity of an indictment is not affected by the type of evidence which is considered by a grand jury even though inadequate or incompetent. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Pittsburgh Plate Glass v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959).

In our opinion, the grand jury was properly instructed on the law of obscenity. During the trial all parties agreed to strike the *Miller* (*v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419) language from the indictment and to consent for the district court to charge a *Roth-Memoirs* (*v. U.*

*S.*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, *v. Mass.*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1) standard with the benefits of *Miller*. However, even if an incorrect instruction was given to the grand jury, which did not occur in the present case, the indictment was valid on its face and was sufficient to require a trial of the indictment on its merits. *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); *United States v. Slepicoff*, 524 F.2d 1244 (5th Cir. 1975).

## II

### Title 18 U.S.C. Section 1465 Is Not Vague Or Overbroad And Is Constitutional.

■ We so held in another case involving a prosecution for transporting Deep Throat in interstate commerce. *United States v. Marks*, 520 F.2d 913 (6th Cir. 1975) *(Marks I)*; See also *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Smith v. United States*, 505 F.2d 824 (6th Cir. 1974); no different rule is required for a multi-state conspiracy. *United States v. Sandy*, 605 F.2d 210 (6th Cir. 1979), *cert. den.*, 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979).

## III

### Appellants Arnone and Battista Were Not Denied Due Process of Law. Scienter Was Proven.

■ The scienter required to support a conviction in the present case is that appellants knew the general nature and character of the film. All of the appellants had such knowledge as was clearly shown by the evidence. It was not necessary that the defendants have personal knowledge of the community standards in each and every place where they distributed the pornographic films. *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *United States v. Sandy*, 605 F.2d 210 (6th Cir. 1979), *cert. den.*, 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979).

## IV

■ In our opinion, the district court did not err in denying defendants' motion for judgment notwithstanding the verdict as Deep Throat is obscene under constitutional standards. A jury issue was presented and in our opinion there was substantial evidence to support the jury's verdict. A majority of the panel have viewed the film. We are unanimously of the opinion that it constituted hard core pornography. *United States v. Marks*, 585 F.2d 164, 171 (6th Cir. 1978).

## V

Appellant Arnone challenged the search upon which the film was seized claiming that it was unreasonable and that the affidavit for the search warrant was insufficient.

Arnone owned a 50 percent interest in the stock of the corporation which held title to the film. Former FBI agent Hester testified that he was investigating the film entitled "The Devil In Miss Jones" and interviewed Jim Newman who was carrying a large box. Newman was using an alias "Bill Cann" and was leaving a motel in Memphis to return to Florida. Newman declined to advise Hester of the name of his employer or the contents of the box, but was advised that if the box contained an obscene film and he crossed state lines, he would be in violation of federal law. Newman returned to the motel and left the box there when he returned to Florida the next day. Hester obtained a search warrant for the box and after he seized and opened it found that it contained two prints of Deep Throat and did not contain the film "The Devil In Miss Jones."

The district judge ruled reluctantly that Arnone had standing but finding probable cause he upheld the validity of the search warrant, and the seizure of the film on the plain view doctrine. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Wasserstrom*, 571 F.2d 351 (6th Cir. 1978).

■ In our opinion, Arnone lacked standing to object to the search of property owned by a corporation in which he was a shareholder, *United States v. Curtis*, 537 F.2d 1091 (10th Cir. 1976), cert. den., 429 U.S. 962, 97 S.Ct. 389, 50 L.Ed.2d 330 (1976), and for the additional reason that the box containing the film had been abandoned by Newman who had custody of it. *United States v. Haddad*, 558 F.2d 968 (9th Cir. 1977). We agree that the search warrant and the seizure were valid.

## VI

### Was More Than One Conspiracy Alleged In the Indictment And Proven At The Trial?

■ It is clear that the indictment alleged only one conspiracy namely to transport an obscene film in interstate commerce. The conspiracy did not relate to merely one shipment to a particular place but was national in scope and related to many shipments made to different states. The appellants are seeking to apply a different conspiracy for each shipment.

Whether or not a single or multiple conspiracies were involved is a factual question which the court properly submitted to the jury. The jury verdict obviously is supported by overwhelming evidence and was approved by the district court. *United States v. Porter*, 441 F.2d 1024 (8th Cir. 1971), cert. den., 404 U.S. 911, 92 S.Ct. 238, 30 L.Ed.2d 184 (1971); *United States v. Varelli*, 407 F.2d 735 (1969).

In *United States v. Sandy*, 605 F.2d 210 (6th Cir. 1979), cert. den., 444 U.S. 984, 100 S.Ct. 490, 62 L.Ed.2d 412 (1979) we upheld a similar national conspiracy conviction.

## VII

### The Admissibility Into Evidence Of Statements In Furtherance Of The Conspiracy.

■ This issue was raised by Louis Peraino, Bryanston and Damiano Films and relates to the testimony of Janice DeSalvo, the wife of one of the co-conspirators, Robert DeSalvo, who was convicted in the first

trial and the testimony of Barbara Stamp, a general secretary who had a close relationship to Robert DeSalvo.

Before admitting the testimony, in view of objections, the district court conducted a voir dire of each witness in the absence of the jury. The district court excluded certain statements made by Janice DeSalvo as to Louis Peraino, but admitted the remainder of her statements as well as the statements of Barbara Stamp as being in furtherance of the conspiracy. *Campbell v. United States*, 415 F.2d 356 (6th Cir. 1969).

In our opinion, the district court ruled correctly. It should also be noted that there was abundant other evidence linking each of said appellants with the conspiracy, so that any error in the admission of such testimony was not prejudicial.

## VIII

### The Closing Argument Of The Assistant United States Attorney To The Jury.

 Appellants Louis Peraino, Bryanston and Damiano Films contend that this argument was improper and denied them of due process of law.

The second trial had lasted more than five weeks and the first trial lasted nine weeks. Both were bitterly contested. The eleven defendants in the second trial were represented by five attorneys. The government had only one attorney. Each attorney presented his views to the jury vigorously. Timely objections to parts of the closing argument were not made. As to the necessity of timely objections, see *United States v. Renfro*, 600 F.2d 55 (6th Cir. 1979); *United States v. Black*, 480 F.2d 504 (6th Cir. 1973). When timely objections were made, the court gave curative instructions to the jury.

The closing argument of the Assistant United States Attorney to the jury is not to be considered isolated from the arguments of the defendant's five lawyers who were forcefully representing their clients but must be read in connection therewith. When so considered, we are of the opinion that the closing argument was properly responsive to the arguments of appellant's lawyers and indeed much of it was provoked thereby.

Furthermore, in view of the overwhelming evidence of guilt, we find no prejudicial error.

## IX

### No Error In The Admission In Evidence Of Certain Proof Or In The Exclusion From Evidence Of Certain Incomparable Materials.

 Appellants contend that the trial court improperly admitted evidence of an IRS investigation. The trouble with this contention, however, is that the subject was first injected into the case by appellants. This evidence was presented in the form of testimony by an IRS agent and was intended to show that a number of appellants met together at different times. Specifically, IRS Agent Brown testified that he had observed a number of meetings involving appellants Arnone, DeSalvo, Louis Peraino, and others during the course of his investigation. The scope of the evidence was restricted by the court.

 Appellants further contend that it was improper to admit evidence that Deep Throat had been seized by law enforcement agents in New Orleans. This proof was offered by the government to show scienter. Appellants argue that the element was not in dispute. It surely was in dispute as it was contended on appeal that the government failed to prove that all of the appellants knew the film was obscene. The admission of proof of other films dealing with sex, the use of fictitious names in shipping the movie, and the destruction of records was admissible to show scienter.

 Finally, appellants contend it was improper to admit proof of pandering, i. e. that the movie was a low budget film, produced by persons who had before made low budget sex films, and the movie was advertised to exploit sex. The government contended that this was offered to show

that appellants intended the film to appeal to the prurient interests. As the Supreme Court has indicated, in *Ginzburg v. United States*, 383 U.S. 463, 470, 86 S.Ct. 942, 947, 16 L.Ed.2d 31 (1966):

> Where the purveyor's sole emphasis is on the sexually provocative aspects of his publications, that fact may be decisive in determination of obscenity.

*See also, Hamling v. United States*, 418 U.S. 87, 130, 94 S.Ct. 2887, 2914, 41 L.Ed.2d 590 (1974).

■ It is further contended that the district court improperly refused to allow the jury to view slides utilized by defendants' expert in the course of sex education programs in the Memphis area.

Appellants contend the slides should have been admitted, the expert having testified that they were comparable to scenes depicted in Deep Throat. The district court, after having conducted a hearing on the issue, held otherwise. Though the court conceded that part of the activity depicted in the slides was somewhat similar to that depicted in the movie, the court felt that the slides manner of presentation and the audience for whom they were intended were sufficiently different so as to be of no probative value on the issue of community standards. We find no abuse of discretion in the ruling of the district court on the admissibility of this evidence.

## X

### The Court's Instructions To The Jury.

After two long trials, the court was very familiar with the issues involved and spent considerable time with counsel in the careful preparation of its instructions.

In considering these issues, the instructions of the court must be viewed in their entirety and when so considered, we find no prejudicial error.

The appellants raise the following issues:

Whether the instructions to the jury were proper with respect to (a) community standards, (b) withdrawal from the conspiracy, (c) circumstantial evidence, (d) expert wit-

nesses and the credibility of witnesses, (e) "utterly without redeeming social value," and (f) pandering.

*Sub-issue (a):* Appellants contend that the court incorrectly refused to instruct the jury that obscenity should be determined by national standards, i. e. what the nation, as opposed to some locality would determine to be obscene. This argument is wholly without merit. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *United States v. Sandy*, 605 F.2d 210, 217–18 (6th Cir. 1979).

■ Appellants Arnone and Battista challenge the instruction on "community standards" which was as follows: (portions italicized are the parts they find objectionable)

> Contemporary community standards are set by what *is in fact accepted* in the community as a whole, that is to say, by society at large or people in general, and not by what some persons or groups of persons may believe the community as a whole ought to *accept*. Customs change and that the *community as a whole may* from time to time find *acceptable* that which was formerly unacceptable and not infrequently *may find presently acceptable* that which some particular group of the population may regard as unacceptable appeal to prurient interest.

In essence, appellants argue that obscenity does not depend on what the community finds acceptable (that is, what the community approves of) but what the community is willing to tolerate. The argument is, however, misplaced. In *Miller*, the court stated:

> The primary concern with requiring a jury to apply the standard of "the *average* person, applying contemporary standards" is to be certain that . . . *it will be judged by its impact on the average person.*

*Miller v. California*, 413 U.S. at 30, 93 S.Ct. at 2618 (emphasis added). In short, the concern is indeed on the materials impact upon the community, as measured by the average member of the community. This point is made even clearer in *Jenkins v.*

*Georgia*, 418 U.S. 153, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974), where the court noted that *Miller* requires triers of fact

.... to decide whether the average person ... would consider certain materials prurient.

*Sub-issue (b):* Appellants Louis Peraino, Bryanston and Gerard Damiano Film Prod. appear to argue that the instruction on withdrawal from a conspiracy placed the burden of proving withdrawal on the defendant. Appellant Arnone argues that the instruction was incorrect because, after telling the jury that withdrawal requires "definite and decisive steps to disassociate himself fully and completely from the conspiracy," the court gave an example: "For example, a defendant may withdraw by making a clean breast to the authorities or by communicating to his co-conspirators his abandonment ... by some effective means." Arnone argues that this example might lead the jury to believe that only such dramatic conduct will indicate withdrawal. Considering the instruction in its entirety does not lead to any such conclusion.

We have held that withdrawal is an affirmative defense. *Blue v. United States*, 138 F.2d 351 (6th Cir. 1943). It must be proved by the defendant. *United States v. Borelli*, 336 F.2d 376 (2nd Cir. 1964); *United States v. Nowak*, 448 F.2d 134 (7th Cir. 1971).

 We have held that withdrawal requires proof of affirmative action to disavow or defeat the purposes of the conspiracy. *Blue v. United States, supra.* The instruction given by the court was in accord with the law of this circuit and was not misleading.

*Sub-issue (c):* Appellants argue that the district court incorrectly refused to instruct the jury that proof by circumstantial evidence of some element of the crime requires the government to disprove "every reasonable theory except the theory of guilt." Appellants rely on *United States v. Leon*, 534 F.2d 667 (6th Cir. 1976) where this court held that "a verdict of guilty cannot stand on appeal where the evidence at most estab-

lishes no more than a choice of reasonable probabilities." In the present cases, the evidence established much more than the mere choices referred to in *Leon*. Furthermore, *Leon* does not require a special instruction on circumstantial evidence. The instruction given by the court was the standard instruction on circumstantial evidence. The Supreme Court has indicated there is no difference between circumstantial and direct proof. *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). Also, the convictions in the present case were not based entirely on circumstantial evidence, but on direct evidence as well.

*Sub-issue (d):* Appellants contend that it was improper for the district court to instruct the jury that it need not accept the opinion of an expert. Appellants cite no case which in any way supports this view. Certainly, expert testimony is not required in an obscenity case, and the instruction was the standard one given to make sure the expert does not invade the province of the jury.

*Sub-issue (e):* Appellants contend that the judge's instruction ("if you find beyond a reasonable doubt that the film Deep Throat does not have the slightest redeeming social importance, you may find that the movie is utterly without redeeming social value.") was improper. They do not indicate why this instruction is improper, and we find nothing incorrect in it.

## XI

### The Trial Court Did Not Abuse Its Discretion In Denying A Mistrial Prior To The Christmas Recess.

 Appellants complain about the court's denial of their motion to declare a mistrial when the jury was deadlocked in their case and in the case of one other defendant just prior to the Christmas holiday recess and the court had given a modified *Allen* charge to the jury.

The jury had previously on December 22, 1978, returned verdicts of not guilty as to defendants Miragliotta and Novello and

guilty verdicts as to appellants Gerard Damiano Productions, Louis Peraino, Bryanston Distributors, Inc., T. Anthony Arnone and Anthony Battista.

At the time the motion for a mistrial was being argued to the court on December 22, 1978, the jury returned a verdict of not guilty in favor of Mario DeSalvo. The jury after the Christmas holidays was unable to agree on a verdict in the case against Michael Cherubino and a mistrial was declared and the indictment against him later was dismissed.

In discussing this topic, complaint is made about pretrial publicity including newspaper articles quoting the prior United States Attorney and his Assistant, television cameras located at one time outside of the courtroom about 18 feet distant therefrom and later removed from the floor on which the courtroom was located, prior to taking of testimony in the case.

As to pretrial newspaper publicity there is no question but that the trial generated publicity although it appeared that more publicity was generated at the first trial than at the second trial. Most of the publicity was reporting by newsmen directed at the film Deep Throat rather than at the defendants. It was not hostile or prejudicial to the defendants. Prior to the second trial, the court determined after a hearing that the indictment should not be dismissed nor should the case be transferred. It would be difficult to find a place in Tennessee for transfer of the case where newspaper or television publicity had not permeated.

It is clear that there was no showing of any prejudice on the part of the jury trying the case. Jury selection was carefully handled by the court and counsel. It took a long time. Each juror was questioned individually on pretrial publicity. All of the defendants were satisfied with the jury.

The performance by the jury was excellent. There was no claim made of jury misconduct. The jury acquitted some of the defendants and convicted others. They gave careful consideration to the issues of the case. There was no proof of juror prejudice against any of the defendants.

We find no prejudice to the defendants occasioned by the television cameras located originally 18 feet from the courtroom door and then later removed from the floor on which the courtroom was located. At the time that the cameras were removed from the entire floor, the first witness in the case had not been called.

It was within the sound discretion of the district court whether to declare a mistrial. In our opinion, that discretion was not abused.

## XII

We find no error in the moderate sentence of Louis Peraino to a term of three years, to serve only six months with the execution of the balance suspended and placed on probation for the balance of the sentence and a fine in the amount of $10,-000. A previous sentence which was illegal under 18 U.S.C. § 3651 was set aside and he was given a correct sentence permitted by the statute.

We are also of the opinion that the conditions of probation as to defendants were permitted as a matter of grace, since it relates to the protection of the public and to the rehabilitation of the defendants.

The judgments of conviction and sentences are hereby affirmed.