924 F.2d 1059
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas P. GIOIOSA, Defendant-Appellant.
 No. 90-3097.
 United States Court of Appeals, Sixth Circuit.
 Feb. 7, 1991.
 
 Before KEITH, KENNEDY and SUHRHEINRICH, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant-appellant Thomas P. Gioiosa ("defendant") appeals from the district court's February 1, 1990 judgment of conviction and sentence entered pursuant to the jury's guilty verdict for: conspiring to distribute cocaine, in violation of 21 U.S.C. Sec. 846; making an untrue declaration on his 1987 income tax return, in violation of 26 U.S.C. Sec. 7206(1); and conspiring to defraud the United States in violation of 18 U.S.C. Sec. 371. On appeal, defendant asserts that the indictment was vague and therefore the denial of a bill of particulars deprived him of fair notice. In the alternative, defendant asserts: the indictment was facially deficient and did not provide him with sufficient notice of the charges against him; the evidence presented at trial constructively amended the indictment; the evidence presented at trial permitted a variance therefrom; and, the government's comments on rebuttal deprived him of a fair trial. For the reasons set forth below, we AFFIRM.
 
 I.
 A.
 
 2
 Donald Stenger ("Stenger") headed a cocaine distribution network operating between Cincinnati, Ohio and Fort Lauderdale, Florida. Stenger and defendant met in 1985, through their mutual membership in a body building gym in Cincinnati. Stenger was involved with several individuals in conspiring to transport, finance and distribute cocaine. Defendant joined the conspiracy in the spring of 1985 by investing $10,000 in the operation. During the summer of 1985, defendant helped further the operation by driving money to Florida to acquire cocaine and delivering it to Stenger in Cincinnati. Stenger then distributed and sold cocaine to other members of the conspiracy. Defendant was paid between $3,000 and $4,000 by Stenger for each trip to Florida. In order to accumulate interest, defendant did not withdraw his initial investment until after he had made several trips. Defendant also assisted Stenger in implementing his cocaine distribution operation by accepting deliveries of cocaine.
 
 
 3
 By the fall of 1986, defendant purchased cocaine from Stenger to distribute to his own clientele, in addition to Stenger's. In one such transaction, defendant bought one kilogram of cocaine from Stenger. Stenger delivered the cocaine to defendant at his apartment in exchange for $33,000. Another member of the conspiracy, Paul Janszen ("Janszen"), purchased cocaine directly from Stenger until September 1986, when he began to purchase cocaine from defendant. Between September and December of 1986, defendant supplied Janszen with approximately 2.5 kilograms of cocaine. Portions of this cocaine were given to Ralph Smith ("Smith"). Smith also formerly bought cocaine directly from Stenger, until the spring of 1986, when he began obtaining cocaine directly from defendant. Smith became in debt to defendant and his co-conspirators in the amount of $10,000. In addition to receiving his supplies of cocaine from Stenger, defendant purchased cocaine from Michael Fry ("Fry"), Stenger's former supplier.
 
 
 4
 In January of 1987, defendant conspired with Janszen and Pete Rose ("Rose") to conceal from the Internal Revenue Service ("IRS") the true winners of a January 14, 1987 'Pick Six' racetrack ticket. Rose purchased the ticket and offered to sell Janszen a 25 percent interest for $1,000. Defendant subsequently bought 50 percent of Janszen's interest in the ticket. When the group realized they had won, defendant cashed the ticket. Rose then gave defendant permission to show the amount of the ticket, $47,646, as income on his tax return. The trio divided up their winnings in proportion to the shares each held, Rose receiving the lion's share of 75 percent, Janszen and defendant 12.5 percent each. Defendant fraudulently claimed income in the amount of $47,646 on his 1987 tax return.
 
 B.
 
 5
 On April 6, 1989, a federal grand jury returned a five count indictment charging defendant with: (1) conspiring to possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. Sec. 846; (2) and (3) tax evasion during 1985 and 1986, in violation of 26 U.S.C. Sec. 7201; (4) making an untrue declaration on his 1987 tax return; and (5) conspiring to defraud the United States, in violation of 18 U.S.C. Sec. 371.
 
 
 6
 Defendant filed numerous pre-trial motions, among them, a motion for a bill of particulars, which the district court denied on June 16, 1989. Jury trial commenced on August 24, 1989, and concluded on September 11, 1989. On September 12, 1989, the jury returned a verdict finding defendant guilty of counts one, four and five, and not guilty of counts two and three.
 
 
 7
 On February 1, 1990, the district court sentenced defendant to five years imprisonment on count one, and five months imprisonment each on counts four and five each, all to run concurrently. Defendant filed a timely notice of appeal on February 2, 1990.
 
 II.
 A.
 
 8
 On appeal, defendant's argument may be construed as asserting that the indictment was vague, thus the district court abused its discretion in denying defendant's motion for a bill of particulars. In the alternative, he argues that the indictment was fatally deficient and did not provide him with fair notice[1]. According to defendant's reasoning, the indictment contained "an inherent unfairness of vague language." Defendant's Brief at 20. Citing Russell v. United States, 369 U.S. 749, 768-770 (1962), defendant claims that the indictment violated his fifth and sixth amendment rights because: (1) it failed to give him fair notice of the charges and, therefore, precluded him from adequately preparing his defense; (2) it did not serve to protect him from double jeopardy; (3) it enabled the prosecutor to shift its theories of criminality; and (4) it failed to ensure that defendant was not convicted on evidence that was not presented to the grand jury. Defendant further argues that count one of the indictment did not provide sufficient notice of the specific charges he would have to defend against. In support of this contention, defendant attempts to distinguish the instant case from United States v. Piccolo, 723 F.2d 1234 (6th Cir.1983), cert. denied, 466 U.S. 970 (1984). Defendant contends that the instant case is much more egregious than the facts in Piccolo, where the indictment failed to identify every member of the conspiracy, because here no other members of the conspiracy were named in the indictment and no overt acts were alleged that specifically named defendant. Thus, the government was able to continually interpose alternate conspiracies at trial.
 
 
 9
 The government counters that the indictment was neither vague, nor deficient, thus defendant was given fair notice of the nature of the charges against him. Further, the government maintains that there is no substantial likelihood that the defendant was convicted of a crime other than the crime charged in the indictment. The government contends the indictment was neither constructively amended nor varied from at trial. The government argues its theory of the case at trial was simple and consistent: Stenger ran a cocaine distribution network operating between Cincinnati and Fort Lauderdale; Stenger needed other people, and other people agreed, to participate in the transportation, financing and distribution of the cocaine; defendant joined the conspiracy in the spring of 1985 by investing money in the operation. He helped further the operation by driving to Florida to purchase cocaine and deliver it to Stenger in Cincinnati, and by accepting delivery of kilograms of cocaine; when cocaine was available from other persons, defendant would make the cocaine available to other of Stenger's customers.
 
 
 10
 The sixth amendment requires that the indictment inform the defendant of the nature and cause of the accusation. United States v. Piccolo, 723 F.2d 1234, 1238 (6th Cir.1983), cert. denied, 466 U.S. 970 (1984). As stated in Russell v. United States, 369 U.S. 749, 763-764 (1962), an indictment is intended to guarantee two principal protections, and is to be measured by two criteria: (1) whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,' "; and (2) whether, " 'in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' " (citations omitted). Further, our review of the district court's denial of defendant's motion for a bill of particulars is limited to determining whether the district court abused its discretion in so doing. Will v. United States, 389 U.S. 90, 98-99 (1967).
 
 
 11
 The district court examined the indictment and found that the charges made therein properly apprised defendant of the charges against him. The purpose of a bill of particulars is not to enable a defendant to obtain detailed disclosure of the government's evidence or theories prior to trial. Rather, the bill of particulars serves to provide specification of the evidence upon which the government intends to rely in proving the offenses charged in the indictment. United States v. Pandilidis, 524 F.2d 644, 647 (6th Cir.1975), cert denied, 424 U.S. 933 (1976). See also United States v. Haskins, 345 F.2d 111, 114 (6th Cir.1965).
 
 
 12
 Here we find no abuse of discretion on the part of the district court in denying defendant's motion for a bill of particulars. Moreover, we find that the language of the indictment was not generic and vague, nor was the indictment facially invalid. See infra note 2. The indictment contained the elements of the offense charged, namely, conspiring to possess with intent to distribute and to distribute cocaine. The indictment sufficiently notified defendant of what to expect at trial. Further, the language of the indictment did not enable the government to shift its theory of criminality at trial, or to interpose alternative conspiracies. Russell, 369 U.S. at 768. Defendant's reliance on Piccolo is inapposite. Piccolo upheld the validity of an indictment which did not name every member of a cocaine conspiracy. Thus, Piccolo stands for the proposition that it is not essential that each conspirator be aware of all other conspirators because it is the grand jury's statement of the existence of a conspiracy agreement, rather than the identity of those who agree, which places defendant on notice.
 
 B.
 
 13
 Defendant contends additionally that the evidence adduced at trial permitted a variance from the indictment. This is so because the indictment charged a single conspiracy, but the evidence at trial demonstrated multiple conspiracies. Defendant argues this substantially prejudiced his rights, citing Kotteakos v. United States, 328 U.S. 750 (1946). Defendant further argues that the variance between the evidence and the indictment was such that it so broadened the indictment as to constitute a constructive amendment.
 
 
 14
 The government contends that the indictment was never varied from at trial and that the evidence conformed to the language of the indictment.[2] The government argues that the district court properly instructed the jury on the issue of multiple conspiracies.[3]
 
 
 15
 In determining whether or not an alleged variation between an indictment and proof at trial creates reversible error, our inquiry must address whether there has been such a variance as to affect the substantial rights of the accused. United States v. Zelinka, 862 F.2d 92, 96-97 (6th Cir.1988) (quoting Berger v. United States, 295 U.S. 78, 82 (1935)). In Zelinka this court relied upon the distinction drawn in Stirone v. United States, 361 U.S. 212, 215-16 (1960), between a variation that has the effect of actually or constructively amending the indictment, thus requiring reversal, and a variation that adds nothing to the indictment, thus constituting harmless error. The former variation is considered prejudicial per se pursuant to the well established rule that an indictment may be amended only by the grand jury. Id.
 
 
 16
 United States v. Hathaway, 798 F.2d 902, (6th Cir.1986) both elaborated on this distinction and formulated the test for determining whether a variance is fatal. " 'A variance occurs when the proof introduced at trial differs materially from the facts alleged in the indictment. In contrast, an amendment involves a change, whether literal or in effect in the terms of the indictment.' " Id. at 910-912 (quoting United States v. Beeler, 587 F.2d 340, 342 (6th Cir.1978), cert. denied, 454 U.S. 860 (1981)). There are three types of variations between a grand jury indictment and evidence produced at trial. An actual amendment occurs when the terms of the charges contained in the indictment are altered. A variance occurs when the charges are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment. A variance rises to the level of a constructive amendment " 'when the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.' " Id. (citations omitted).
 
 
 17
 Hathaway recognized that amendments are deemed prejudicial per se because they involve a change, either literal or in effect, in the terms of the indictment. Variances, on the other hand, will not constitute reversible error unless "substantial rights" of defendant have been affected. Id. at 910-911 (citations omitted). Substantial rights are affected only when a defendant's ability to defend himself at trial is prejudiced. The general fairness of the trial, and the indictment's sufficiency to bar subsequent prosecutions must also similarly be prejudiced. Id.
 
 
 18
 The application of the foregoing standards to the instant case leads us to the conclude that the indictment was not constructively amended at trial, nor was it fatally varied from at trial. Defendant's argument that the admission into evidence of what he characterizes as multiple conspiracies effectively amended the indictment or constituted a fatal variance therefrom fails. This argument fails because the evidence presented at trial reflected the charging terms of the indictment. Thus, there was no constructive amendment of the indictment. There exists no substantial likelihood that defendant was convicted of participation in conspiracies not charged in the indictment.
 
 
 19
 Defendant argues that the language of the indictment indicates a single conspiracy and that the admission into evidence of numerous conspiracies, some of which defendant was not a member, created a substantial likelihood that he was convicted of a conspiracy not charged in the indictment. This argument hinges on the fact that defendant allegedly "split up" with Stenger by 1986, when defendant began to sell cocaine to his own clientele. Thus, the evidence established at least two separate cocaine conspiracies involving defendant, one comprised of defendant and Stenger, and another comprised of Fry, defendant and Janszen.
 
 
 20
 This argument ignores both the reality of the facts established in the instant case, and the underlying definition of a conspiracy, which is agreement to commit one or more unlawful acts. As stated by the Supreme Court in United States v. Broce, 488 U.S. 563 (1989), "[i]n a conspiracy charge, the term "agreement" is all but synonymous with the conspiracy itself, and as such has great operative force." Id. at 570. The Supreme Court went on to state the following:
 
 
 21
 '[T]he gist of the crime of conspiracy ... is the agreement ... to commit one or more unlawful acts,' from which it follows that 'the precise nature and extent of the conspiracy must be determined by reference to the agreement which embraces and defines its objects.' A single agreement to commit several crimes constitutes one conspiracy.
 
 
 22
 Id. (quoting Braverman v. United States, 317 U.S. 49, 53 (1942)). Here, we are presented with precisely such an instance of a single agreement, therefore, a single conspiracy to commit repeatedly the offense of possession, with intent to distribute and distribution of cocaine.
 
 
 23
 Defendant's argument that he withdrew from the conspiracy with Stenger when he removed his $10,000 investment fails because defendant continued to purchase cocaine from Stenger in order to supply other members of the conspiracy to distribute cocaine. Defendant ignores the elements of the offense charged, which are that he conspired with others to form a cocaine distribution network. It is difficult to comprehend defendant's notion of 'discrete' conspiracies with different time spans when, even assuming there were two separate conspiracies, both the members and the activity of the conspiracies were virtually identical. Defendant's arguments assume that, because he began to sell to others directly himself, and because he purchased cocaine from individuals other than Stenger as his illicit involvement continued, he formed a separate conspiracy once he "withdrew" his $10,000.
 
 
 24
 The point is, however, what he did with the profits once he withdrew them; he reinvested them in purchasing cocaine for the purpose of distributing the same. Moreover, he was still a member of the overall cocaine distribution network of individuals who entered into a mutual agreement to achieve this common purpose. This cannot be considered an "affirmative act inconsistent with the object of the conspiracy ... communicated in a manner reasonably calculated to reach co-conspirators." United States v. United States Gypsum Co., 438 U.S. 422 (1978). Further, we have held that withdrawal requires proof of affirmative action to disavow or defeat the purposes of the conspiracy. United States v. Battista, 646 F.2d 237, 246 (6th Cir.), cert. denied, 454 U.S. 1046 (1981). The facts fail to support a finding that defendant withdrew from the conspiracy.
 
 
 25
 The issue of multiple conspiracies versus a single conspiracy was submitted to the jury with proper instructions. See supra note 3. These instructions did not so modify the essential elements of the offense charged that there exists a substantial likelihood that defendant was convicted of a different crime. Whether a single or multiple conspiracies were involved is a factual question properly submitted to the jury. Battista, 646 F.2d at 243. The jury's finding of one single overarching conspiracy is supported by overwhelming evidence.
 
 
 26
 Finding the indictment was not constructively amended at trial, we conclude that defendant was convicted of the offense charged in the indictment. Further, the indictment was not varied from at trial. Assuming, arguendo, that a variance exists, such was not fatal. The evidence presented at trial was consistent with the conspiracy charged, and defendant's participation in it.
 
 C.
 
 27
 Defendant argues that the government's comments on rebuttal, intimating that defense counsel made false statements and thus knowingly attempted to deceive the jury, were prejudicial and deprived him of a fair trial.
 
 
 28
 The government submits that the prosecutor's remarks on rebuttal did not prejudice defendant's right to a fair trial. We find the government's argument persuasive.
 
 
 29
 In determining whether the government's comments on rebuttal were improper and deprived defendant of a fair trial, the requisite inquiry is the degree to which the remarks complained of have a tendency to mislead the jury and prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the evidence introduced to prove guilt. United States v. Leon, 534 F.2d 667 (6th Cir.1976). Further, prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial. United States v. Krebs, 788 F.2d 1166, 1177 (6th Cir.), cert. denied, 479 U.S. 930 (1986). Thus, we must determine, in the exercise of our supervisory powers, whether defendant's conviction should be reversed because of the improper conduct of the prosecutor. In doing so, we must review the entire record to determine whether the misconduct can be considered harmless. Id.
 
 
 30
 In the government's rebuttal argument, the United States Attorney ("U.S. Attorney") made several remarks concerning the government's ability to call witnesses to prove collateral issues under Fed.R.Evid. 608(b). These remarks were made in response to remarks made by defense counsel in closing. The complained of remark by the U.S. Attorney was to the effect that "[defense counsel] suggests to you that the Government should have called a lot of witnesses, [sic] the law does not permit the Government to do that." Joint Appendix at 379-380 (Transcript of government's rebuttal argument). Defendant argues that the foregoing remark suggested to the jury that defense counsel was knowingly lying to the jury. Defendant contends that the government characterized several points emphasized repeatedly by defense counsel as false as a matter of law, constituting a knowing attempt on the part of defense counsel to deceive the jury.
 
 
 31
 While we find the U.S. Attorney's remarks improper, they did not rise to the level of prejudice so as to render the entire trial fundamentally unfair, thus constituting reversible error. United States v. Causey, 834 F.2d 1277, 1284 (6th Cir.1987) (citing United States v. Young, 470 U.S. 1, 11 (1985)), cert. denied, 486 U.S. 1034 (1988) The potential for prejudice was not substantial; the objectionable portion of the prosecutor's argument was not extensive; and it is not clear that the U.S. Attorney deliberately attempted to mislead the jury. As we stated in United States v. Calendrella, 605 F.2d 236 (6th Cir.), cert. denied, 444 U.S. 991 (1979), federal prosecutors are given "a certain degree of latitude in summation." Id. at 254. Thus, the isolated remarks did not vitiate the trial which was conducted free from prejudicial error. Id.
 
 III.
 
 32
 For the foregoing reasons, we AFFIRM the judgment of the Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio.
 
 
 
 [1]
 The logic of defendant's argument conflates the standards by which this court must evaluate the denial of a bill of particulars. Defendant apparently recognizes that a bill of particulars cannot cure a facially deficient indictment because it is the function of the grand jury to charge through a duly returned indictment, independent of either prosecutor and judge. Russell v. United States, 369 U.S. 749, 770 (1962). However, defendant goes on to insist that "in the absence of overt acts and the denial of a bill of particulars [sic], there is a heightened need for judicial scrutiny and review of the nature and parameters of the agreement charged. Here, the trial court repeatedly refused to undertake such scrutiny." Defendant's Brief at 22. Defendant directs this argument specifically to the cocaine distribution conspiracy charged in count one of the indictment
 
 
 [2]
 The indictment states:
 It was a part of the conspiracy that its members would obtain cocaine from Florida for distribution in the Southern District of Ohio.
 It was further part of the conspiracy that cocaine would be provided to and between members of the conspiracy on credit in order to facilitate the movement of cocaine and currency among the members of the conspiracy.
 Joint Appendix at 10 (April 6, 1989 federal grand jury indictment).
 
 
 [3]
 The court properly left the determination of single versus multiple conspiracies to the jury and instructed the jury as follows:
 You are further instructed, with regard to the alleged conspiracy offense, that proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment unless one of the several conspiracies which is proved is the single conspiracy which the indictment charges. What you must do is determine whether the single conspiracy charged in the indictment existed between two or more conspirators. If you find that no such conspiracy existed, then you must acquit the defendant as to that charge.
 If you find that the defendant is a member of another conspiracy, not the one charged in the indictment, then you must acquit the defendant. In other words, to find the defendant guilty you must find that he was a member of the conspiracy charged in the indictment and not some other, separate conspiracy.
 Government's Brief at 15 (Jury Instructions at 14). United States v. Battista, 646 F.2d 237, 243 (6th Cir.), cert. denied, 454 U.S. 1046 (1981).