**ADULT VIDEO ASSOCIATION, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, et al., Defendants.**

**No. 92–2884–TUBRO.**

United States District Court, W.D. Tennessee, Western Division.

March 31, 1994.

Michael F. Pleasants, Memphis, TN, J. Michael Murray, Berkman Gordon Murray & Palda, Cleveland, OH, for plaintiffs.

Robert M. Williams, Office of the U.S. Atty., Memphis, TN, Stuart M. Gerson, Office of the Atty. Gen., Washington, DC, Kevin Simpson, Vincent M. Garvey, U.S. Dept. of Justice, Washington, DC, for defendants.

## ORDER ON MOTION TO DISMISS

TURNER, District Judge.

Plaintiffs filed the instant complaint on October 22, 1992, seeking a declaratory judgment under 28 U.S.C. § 2201 that the film entitled "After Midnight" ("the videotape") is protected under the First Amendment to the Constitution and is not legally obscene in the Western District of Tennessee ("the District").[1] Defendants have filed a motion to dismiss the complaint or in the alternative for a more definite statement. This court heard oral arguments on that motion on March 28, 1994.

### FACTS

Plaintiffs are a trade association whose members are involved in the production, manufacture, distribution, sale, or rental of sexually explicit videotapes, some of whom wish to ship or mail the videotape into the District or to sell or rent the videotape to adult consumers within the District; a producer of adult videotapes which possesses the exclusive right to distribute the videotape and desires to distribute it to consumers and retailers in the District; and a retail distributor of adult videotapes located within the District who wishes to obtain and distribute the videotape to adult customers. The defendants are government officials charged with the enforcement of the federal obscenity laws in the District and are sued in their official capacities.

The federal obscenity laws, *see supra* note 1, incorporate the legal test for obscenity announced by the Supreme Court in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Under the *Miller* standard, sexually explicit material may be considered either constitutionally protected speech or unprotected obscene speech depending upon whether: (1) the average adult person applying the contemporary community standards of the District would find that the material, when taken as a whole, appeals

1. The plaintiffs maintain that without such declaratory relief, they risk being prosecuted under federal obscenity laws by distributing the videotape into the District. The plaintiffs have referred specifically to 18 U.S.C. §§ 1461, 1462, 1465, 1466, 1467, 1961, 1962, 1963, and 3571. Compl. at ¶ 25–30.

to the prurient interest; (2) the average person applying the contemporary community standards of the District would find that the material is patently offensive; and (3) a reasonable person would find that the material, when taken as a whole, lacks serious literary, artistic, political, or scientific value. *Id.* at 24, 93 S.Ct. at 2614. Thus, whether or not sexually explicit material is protected under the First Amendment or subject to the prohibition of the federal obscenity laws depends in part upon the contemporary community standards of the particular community at issue.

The plaintiffs concede in their complaint the sexually explicit nature of the videotape. The plaintiffs assert that they do not believe that the videotape would be considered obscene under the contemporary community standards of this District and that they therefore desire to exercise their First Amendment right to distribute the videotape in this District; however, they do not wish to subject themselves to prosecution and criminal sanction, including stiff fines and possible prison terms, in the event they have misjudged the contemporary community standards of this District. Accordingly, they seek a declaration that the videotape is constitutionally protected applying the contemporary community standards of this District in accordance with the *Miller* test.

In support of their motion to dismiss, the defendants argue that the plaintiffs lack standing and that there is consequently no justiciable "Case" or "Controversy" before this court. *See* U.S. Const. Art. III, sec. 2. For reasons stated below, the court agrees and accordingly grants the defendants' motion to dismiss.

### DISCUSSION

This court cannot "pronounce any statute, either of a State or of the United States, void, because irreconcilable with the Constitution, except as it is called upon to adjudge the legal rights of litigants in actual controversies." *Liverpool, N.Y. & P.S.S. Co. v. Emigration Comm'rs.,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885). In order to bring an action in federal court, a litigant must have a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues." *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). This requirement, derived from the "Case" or "Controversy" language of Article III,[2] is known as "standing":

> [T]he irreducible constitutional minimum of standing contains three elements: First the plaintiff must have suffered an injury in fact—an invasion of a legally-protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations and internal quotations and alterations omitted).

With respect to the videotape which is the subject matter of this litigation, the plaintiffs have not engaged in any activity in this District for which they could be prosecuted under federal obscenity law. The plaintiffs have merely alleged a desire to engage in activity in this District (distributing the videotape), the criminal nature of which is uncertain. The plaintiffs have alleged no facts which would support a finding that the defendants have harassed them or threatened them with prosecution in connection with the videotape. Indeed, the plaintiffs have alleged no specific facts which give the court any reason whatsoever to believe that the plaintiffs will be prosecuted if they distribute

---

2. This concept is also codified in the federal Declaratory Judgment Act itself, which provides as follows:

    (a) *In a case of actual controversy* within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration.

28 U.S.C. § 2201 (emphasis added).

the videotape in this District.[3] What the plaintiffs are seeking is, in essence, an advisory opinion.

■■■ The plaintiffs have cited various cases to this court which authorize a constitutional challenge prior to the enforcement of a statute against the aggrieved party. These cases are inapplicable because they involve either: (1) a threat or other action indicating that there is an actual dispute between the parties, *see, e.g., Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); or (2) a facial challenge to a statute,[4] *see, e.g., Virginia v. American Booksellers Ass'n, Inc.,* 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *Secretary of State of Maryland v. Joseph H. Munson Co.,* · 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984); *Doe v. Bolton,* 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). The plaintiffs have cited no cases which authorize a pre-enforcement challenge to the anticipated *application* of a statute—at some unknown future time—in the absence of specific facts indicating that a dispute exists between the parties.

The plaintiffs have also claimed on oral argument that the United States Supreme Court has given its blessing to the use of declaratory judgment proceedings to test the obscenity of videotapes. In support of this argument, the plaintiffs cite *Paris Adult*

*Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), in which the Court commented on a Georgia civil proceeding that permitted an injunction against the exhibition of obscene materials. The Court remanded the case but applauded the Georgia proceeding for giving notice to an exhibitor or purveyor of materials prior to any criminal indictments. *Id.* at 54–55, 93 S.Ct. at 2633–2634. The Court also noted that "[t]his procedure would have even more merit if the exhibitor or purveyor could also test the issue of obscenity in a similar civil action, prior to any exposure to criminal penalty." *Id.* at 55, n. 4, 93 S.Ct. at 2634, n. 4.

The court is not persuaded by the dicta in *Paris Adult Theatre I.* In suggesting that the described state proceeding would have "merit," the Supreme Court did not hold that such a proceeding would be constitutional if brought in federal court. Indeed, federal courts have long applauded and encouraged the use of certain procedures (i.e., certified questions) in state courts, notwithstanding the fact that such procedures would not be permitted in federal court.

■■ The court is unpersuaded by the plaintiffs' argument that they have been "injured" as a result of having to choose between self-censorship and the risk of prosecution and conviction. It is true that in

3. The only stated bases for the plaintiffs' fear of prosecution are as follows: (1) The United States Justice Department has "initiated an unprecedented effort to prosecute federal obscenity cases around the country," Compl. at ¶ 34; (2) defendants "have prosecuted persons and corporations for alleged shipment or sale of other sexually explicit videotapes into or within the Western District of Tennessee in violation of federal obscenity statutes," Compl. at ¶ 35; (3) these "other" videotapes have contained "graphic depictions of comparable sexual acts to those shown in 'the Videotape' in this case," Compl. at ¶ 35, 36; and (4) the defendants refused to provide the plaintiffs with any guidance as to whether the videotape was considered obscene in this District or whether transactions involving the videotape would be prosecuted in this District. Compl. at 41, 42.

4. The assumption that a statute will be enforced in some capacity is typically a safe one. *See, e.g., Virginia v. American Booksellers Assn.,* 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988) ("The State has not suggested that the newly enacted law will not be enforced, and we

see no reason to assume otherwise"). When a statute is the subject of a facial First Amendment challenge, "the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged." *Secretary of State v. J.H. Munson Co.,* 467 U.S. 947, 956, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984); *see also Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (permitting a facial "overbreadth" challenge to a statute even though the plaintiff's conduct was not protected by the First Amendment).

In contrast, there is no reason to assume that a facially valid statute will be *applied* in an unconstitutional manner against any person, unless specific facts to that effect are shown. *See F.X. Maltz, Ltd. v. Morgenthau,* 556 F.2d 123, 124–25 (1977) ("Absent proof of … [inter alia] … the scope of an actual threat of police action, the district court could not, without violating Article III's proscription against 'advisory opinions' grant relief").

order to eliminate the risk of prosecution—and perhaps even conviction—the plaintiffs must refrain from engaging in what they believe to be constitutionally protected activity. However,

> [o]ur cases have long recognized the practical reality that any form of criminal obscenity statute applicable to a bookseller [or video producer or distributor] will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene. The mere assertion of some possible self-censorship resulting from a statute is not enough to render an anti-obscenity law unconstitutional under our precedents.

*Fort Wayne Books, Inc. v. Indiana,* 489 U.S. 46, 60, 109 S.Ct. 916, 925, 103 L.Ed.2d 34 (1989). For similar reasons, the mere assertion of self-censorship resulting from a facially valid statute[5] is not sufficient to bring the instant action within the case or controversy requirement of Article III. It is the determination of this court that the plaintiffs have failed to allege a sufficient injury-in-fact to have standing in this action.

■ Furthermore, a declaratory judgment should be granted only as a matter of judicial discretion,[6] exercised in the public interest. *Public Affairs Associates, Inc. v. Rickover,* 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). It is the opinion of this court that the public interest would not be well served by judicial determinations of obscenity vel non prior to the commencement of some adversarial action by the government which would indicate the existence of a live controversy.

5. The plaintiffs have not challenged the facial validity of any of the statutes under which they believe they could be prosecuted.

6. The federal Declaratory Judgment Act provides as follows:
   (a) In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201 (emphasis added).

7. Contemporary community standards can, and do, change over time. *See, e.g., United States v. Various Articles of Merchandise,* 600 F.Supp.

This is true for two reasons. First, as a practical matter, the issue of obscenity vel non would be next to impossible to determine prior to distribution of the allegedly obscene article. The court would be required to anticipate the "contemporary community standards" of some future time,[7] as well as the manner in which the videotape would be marketed.[8] While it is true that the plaintiffs could put on proof as to these issues, the court's ruling would necessarily be limited to the hypothetical facts presented before it, and the ruling would consequently be of limited res judicata effect. Second, in the absence of direct evidence that criminal charges would likely result from the distribution of an article to this District, the United States Government should not be burdened by defending this type of declaratory judgment action every time a new arguably obscene videotape, book or other item is distributed.

### CONCLUSION

The plaintiffs do not have standing to bring this declaratory judgment action. The action is accordingly dismissed pursuant to Article III of the United States Constitution, as well as 28 U.S.C. § 2201. Alternatively, the case is dismissed pursuant to the court's discretion under 28 U.S.C. § 2201. The defendants' motion to dismiss is hereby granted, and the action is dismissed with prejudice.

IT IS SO ORDERED.

1383, 1386, 1387 (N.D.Ill.1985) (noting the difference between the mores of 1985 and those of 1963, and pointing out that the standards may be different again in the future).

8. Evidence of "pandering" is admissible to show that a distributor intended a film to appeal to prurient interests. *United States v. Battista,* 646 F.2d 237 (6th Cir.1981) (relying on *Ginzburg v. United States,* 383 U.S. 463, 470, 86 S.Ct. 942, 947, 16 L.Ed.2d 31 (1966)). That intent is relevant to the ultimate inquiry of obscenity. *Pinkus v. United States,* 436 U.S. 293, 98 S.Ct. 1808, 56 L.Ed.2d 293 (1978).